187 P.3d 780 (2008)
Jim A. TOBIN, Respondent,
v.
DEPARTMENT OF LABOR & INDUSTRIES, Appellant.
No. 36031-4-II.
Court of Appeals of Washington, Division 2.
July 1, 2008.
*781 Michael King Hall, Office of the Atty. General, Olympia, WA, for Appellant.
David W. Lauman, Attorney at Law, Tacoma, WA, for Respondent.
QUINN-BRINTNALL, J.
¶ 1 The Department of Labor and Industries (L & I) appeals the superior court's finding that L & I cannot seek reimbursement from the portion of Jim A. Tobin's third party recovery compensating him for his pain and suffering following a work-related injury that he sustained when a crane boom crushed him. L & I argues that the statutory reimbursement use of the term "recovery" includes "all damages except loss of consortium" and that it is entitled to seek reimbursement from the pain and suffering portion of Tobin's damages. We hold that, because L & I did not, and will not, pay pain and suffering damages, it is not entitled to sue for reimbursement from that portion of Tobin's third party recovery compensating him for his pain and suffering; we affirm.

FACTS
Factual Background[1]
A. Tobin's Injury and Worker's Compensation Benefits
¶ 2 In June 2003, while Tobin was working for Saybr Contractors, Inc., he was injured when a crane boom, operated by a third party, swung unexpectedly and crushed him against a post. L & I accepted Tobin's subsequent worker's compensation application and paid him time loss compensation and medical benefits.
¶ 3 In March 2005, L & I determined that Tobin was totally and permanently disabled as a result of this work-related injury and began paying him pension benefits. Tobin is entitled to receive these pension benefits for the rest of his natural life, rather than for the rest of his working life or until he reaches retirement age.
B. Tobin's Third Party Recovery and Distribution
¶ 4 Because a third party's negligence had caused his injury, in addition to successfully applying for workers' compensation benefits, he sued the responsible third party for damages.[2] In September 2005, Tobin settled his third party claim for $1.4 million, allocated as follows:

 Medical Expenses: $ 29,326.84
 Future Medical Expenses: $ 14,647.00
 Total wage loss (past & future): $562,943.00
 Pain and Suffering: $793,083.16

Administrative Record (AR) at 70.
¶ 5 On September 29, 2005, L & I applied RCW 51.24.060(1)[3] and issued an order calculating *782 the distribution[4] of Tobin's $1.4 million third party recovery as follows:

 Attorney's share: $472,262.44
 Claimant's share: $874,391.25
 [L & I's] share: $ 53,346.31

AR at 71. At the time L & I issued the distribution order, it had paid Tobin workers' compensation benefits totaling $80,501.40. These benefits included $25,208.93 in medical treatment, $42,893.89 in time loss compensation, and $12,398.58 in pension benefits.
¶ 6 In September 2005, using the distribution formula from the third party recovery statute, RCW 51.24.060, L & I calculated that $425,735.63 of Tobin's $874,391.25 share was "excess recovery" which would offset future workers' compensation benefits that L & I would otherwise pay. AR at 71; see RCW 51.24.060(1)(a)-(e). L & I's order left Tobin's pension benefits intact.
Procedural History
A. The Board of Industrial Insurance Appeals
¶ 7 Tobin appealed L & I's order to the Board of Industrial Insurance Appeals (Board). There, Tobin argued that L & I should have excluded his $793,083.16 "pain and suffering" damages from the "recovery" figure used to calculate distribution of the proceeds of his third party settlement. Specifically, Tobin argued that L & I did not pay him any compensation for his pain and suffering and it could not be reimbursed for payments it never made. Tobin also argued that including his pain and suffering damages in the distribution formula amounted to an unconstitutional taking.
¶ 8 On June 6, 2006, the Board's industrial insurance appeals judge (IIAJ) issued a proposed decision and order upholding L & I's distribution order. The IIAJ reasoned that RCW 51.24.030 authorizes L & I to assert a right of recovery for third party awards for pain and suffering because RCW 51.24.030(5) defined "recovery" as "all damages except loss of consortium," thereby including the part of Tobin's recovery compensating him for his pain and suffering. Tobin filed a petition for review to the full Board; the Board denied his petition.
B. The Superior Court
¶ 9 Tobin appealed the Board's decision to the Pierce County Superior Court. The superior court reversed the Board, finding that L & I cannot be reimbursed from the pain and suffering portion of Tobin's third party distribution. In making this ruling, the trial court relied on Flanigan v. Department of Labor & Industries, 123 Wash.2d 418, 423-24, 869 P.2d 14 (1994), in which our Supreme Court held that L & I's statutory right to reimbursement does not extend to a spouse's recovery for loss of consortium because RCW 51.24.060 provides that L & I can be "reimburse[ed]" only for "benefits paid," and L & I does not compensate the injured worker for loss of consortium. Specifically, here, the superior court found that, because L & I did not pay Tobin for his pain and suffering, the pain and suffering portion of Tobin's third party recovery, like the loss of consortium recovery in Flanigan, cannot be subject to distribution.
¶ 10 L & I timely appeals.

ANALYSIS
Standard of Review
¶ 11 L & I argues that the trial court's reasoning is flawed because, under RCW 51.24.030(5), "recovery" includes "all damages except loss of consortium" and necessarily includes all other forms of damages, including pain and suffering. We disagree. Under the Flanigan rationale, because L & I did not compensate Tobin for his pain and suffering, it cannot be "reimbursed" from that portion of Tobin's award.
¶ 12 When the Board reviews a case on stipulated facts, any remaining issues are questions of law which we review de novo. *783 Tunstall v. Bergeson, 141 Wash.2d 201, 209-10, 5 P.3d 691 (2000), cert. denied, 532 U.S. 920, 121 S.Ct. 1356, 149 L.Ed.2d 286 (2001).
¶ 13 Washington workers injured in the course of their employment are entitled to benefits under Title 51 RCW, the Industrial Insurance Act (IIA). These workers' compensation benefits are, with limited exceptions, the exclusive remedy available to injured workers. See RCW 51.04.010. The third party recovery statute, RCW 51.24.030, sets out the few exceptions to Title 51 RCW's exclusive remedy provisions. See Bankhead v. Aztec Constr. Co., 48 Wash.App. 102, 106, 737 P.2d 1291 (1987). RCW 51.24.030(1) permits an injured worker to pursue a tort claim "[i]f a third person, not in a worker's same employ, is or may become liable to pay damages on account of a worker's injury for which benefits and compensation are provided under this title."
¶ 14 Under the third party recovery statute, any recovery is divided and distributed in the following order: (1) attorney fees and costs are paid, (2) 25 percent of the balance goes to the injured employee or beneficiary, and (3) L & I "shall be paid the balance of the recovery made, but only to the extent necessary to reimburse [L & I] for benefits paid." RCW 51.24.060(1)(a)-(c). Any remaining balance is paid to the employee or beneficiary. RCW 51.24.060(1)(d). Thereafter, the employee or beneficiary is not entitled to receive additional workers' compensation benefits until the additional benefits equal the remaining balance of the recovery paid to the employee or beneficiary. RCW 51.24.060(1)(e).
¶ 15 Allowing these third party actions serves two purposes: first, it spreads responsibility for compensating injured employees and their beneficiaries to third parties who are legally and factually responsible for the injury and, second, it permits the employee to increase his or her compensation beyond the IIA's limited benefits. Flanigan, 123 Wash.2d at 424, 869 P.2d 14 (citing Maxey v. Dep't of Labor & Indus., 114 Wash.2d 542, 549, 789 P.2d 75 (1990)). Allowing L & I to obtain reimbursement from the proceeds of a third party recovery likewise serves two roles: it ensures that the accident and medical funds are not charged for damages caused by a third party, and it also ensures that the injured employee does not make a double recovery. Flanigan, 123 Wash.2d at 425, 869 P.2d 14 (citing Maxey, 114 Wash.2d at 549, 789 P.2d 75). In other words, the injured worker "cannot be paid compensation and benefits from [L & I] and yet retain the portion of damages which would include those same elements." Flanigan, 123 Wash.2d at 425, 869 P.2d 14 (quoting Maxey, 114 Wash.2d at 549, 789 P.2d 75) (emphasis omitted).
Workers' Compensation Benefits and Third Party Actions
¶ 16 L & I argues that RCW 51.24.030(5) requires it to exclude loss of consortium damages from its distribution of third party recoveries but mandates that it include all other damages, such as damages for pain and suffering, regardless of whether it first compensated the injured worker for that portion of his recovery. We disagree.
A. Third Party Recovery Statute Distribution Calculation
¶ 17 Here, relying on Flanigan, the trial court held that Tobin's pain and suffering damages were not subject to distribution under the third party distribution statute. We agree. Because L & I did not, and will not, pay pain and suffering damages, it cannot recover from that portion of Tobin's third party recovery compensating him for his pain and suffering.[5]See Flanigan, 123 Wash.2d at 423, 869 P.2d 14. As such, the pain and suffering portion of Tobin's third party damages is not a "recovery" as it is defined under RCW 51.24.030(5).
¶ 18 Shortly after the Flanigan decision, the legislature passed RCW 51.24.030(5), which provides: "For the purposes of this chapter, `recovery' includes all damages except loss of consortium."
*784 ¶ 19 L & I argues that the amendment of RCW 51.24.030 codified Flanigan's[6] holding that loss of consortium damages are not subject to distribution and simultaneously rejected our Supreme Court's suggestion that damages for pain and suffering might also be exempt from distribution. As a result, L & I argues that the plain language of RCW 51.24.030(5) requires it to exclude loss of consortium damages from its distribution of third party recoveries but it requires that it include all other damages. We disagree.
¶ 20 We review questions of law, including statutory construction, de novo. City of Pasco v. Pub. Employment Relations Comm'n, 119 Wash.2d 504, 507, 833 P.2d 381 (1992). And we construe statutory language according to its plain and ordinary meaning. Flanigan, 123 Wash.2d at 426, 869 P.2d 14.
¶ 21 Although RCW 51.24.030(5)'s amendment defines "recovery" as "all damages except loss of consortium," the legislature drafted the statute using the terms "reimbursing" L & I for "benefits paid." See RCW 51.24.060(1)(c). We read these statutes together. Donovick v. Seattle-First Nat'l Bank, 111 Wash.2d 413, 415, 757 P.2d 1378 (1988) (holding that statutes are read as a whole, not piecemeal). The term "reimburse" means "to pay back (an equivalent for something taken, lost, or expended) to someone: REPAY." Flanigan, 123 Wash.2d at 426, 869 P.2d 14 (quoting Webster's Third New Int'l Dictionary 1914 (1986)).
¶ 22 Here, L & I's position would give it an "unjustified windfall" at Tobin's expense. See Flanigan, 123 Wash.2d at 425, 869 P.2d 14. Under L & I's interpretation, it would be entitled to share in damages for which it has not provided and will never pay compensation. We do not interpret these statutes to require such a fundamentally unjust result. See Flanigan, 123 Wash.2d at 426, 869 P.2d 14 (citing Ski Acres, Inc. v. Kittitas County, 118 Wash.2d 852, 857, 827 P.2d 1000 (1992)). L & I did not, and will never, compensate Tobin for his pain and suffering, therefore it cannot be "reimbursed" from funds designated to compensate him for his pain and suffering. See Flanigan, 123 Wash.2d at 426, 869 P.2d 14.
B. Legislative History
¶ 23 Next, L & I argues that RCW 51.24.030(5)'s legislative history "provides overwhelming evidence that the Legislature intended [the amendment to RCW 51.24.030(5)] to limit Flanigan's reach, thereby ensuring that damages such as pain and suffering were included in distributions made under the Third Party Recovery Statute."[7] Br. of Appellant at 22. Again, we disagree. Contrary to L & I's assertion, the legislative history of RCW 51.24.030(5) does not "conclusively establish" that the legislature intended that all damages, except for loss of consortium, be included in the distribution calculation, only that L & I intended that it do so.
¶ 24 As legislative history, L & I points this court primarily to its own testimony at various hearings as well as its own proposed legislation summary to support its theory that the legislature intended to allow L & I to seek reimbursement from a portion of an injured workers' recovery for which it did not provide compensation, such as pain and suffering. At the Senate Labor, Commerce, and Trade Committee hearing, L & I's then Deputy Director, Mike Watson, testified that L & I sought to codify that the loss of consortium is the only part of a third party recovery for an injury that would not be subject to repayment of the benefits because it is a significant source of replenishment of the fund and provides for additional recovery for injured workers or their survivors. See *785 S.B. 5399, 54th Leg., Reg. Sess. (Wash.1995). Watson described L & I's wishes similarly in his testimony in front of the House Commerce and Labor Committee.[8]
¶ 25 Although there was some discussion of general damages by witnesses before the committees, it does not appear that any of these discussions took place before the full house or senate. More importantly, these discussions do not appear in the legislative report for the bill or bill analysis. See Final Legislative Report, 54th Leg. (Wash.1995). We note the testimony of an interested party in support of a bill is not suggestive of the legislature's intent in enacting the statute.[9]See In re Marriage of Kovacs, 121 Wash.2d 795, 807, 854 P.2d 629 (1993) (while suggestive, the statements of individual lawmakers and others before the Senate Judiciary Committee cannot be used to conclusively establish the intent of the legislature as a whole); Wilmot v. Kaiser Aluminum & Chem. Corp., 118 Wash.2d 46, 64, 821 P.2d 18 (1991) (testimony before a legislative committee is given little weight in determining legislative history). Because the legislative history does not provide evidence that the legislature intended to allow L & I to access the pain and suffering portion of a third party recovery to reimburse it for money it paid to compensate an injured worker's other losses, i.e., medical expenses, its argument fails.
C. Due Process
¶ 26 L & I argues that by excluding Tobin's pain and suffering damages from the distribution formula, Tobin will receive a double recovery. Specifically, L & I argues that it retains a right to reimbursement for all the benefits it has paid Tobin from all sources of recovery, including his pain and suffering, because otherwise he will receive more in combined tort damages and workers' compensation benefits than he would under either system alone. Tobin argues that the pain and suffering damages he recovered are his private property and, if this court permits L & I to include these damages in its distribution under RCW 51.24.060, it would constitute an unconstitutional taking in violation of the state and federal constitutions.
¶ 27 Tobin frames his argument as whether L & I's right to reimbursement from his pain and suffering damages for unrelated payments constitutes an unconstitutional taking in violation of his right to due process. But the real issue is whether the statute gives injured workers adequate notice that third party settlement funds earmarked as compensation for their personal pain and suffering are subject to distribution under RCW 51.24.060 to reimburse L & I for payments it made to compensate the worker for other losses. We hold that it does not.
¶ 28 The fundamental requisites of due process are "`the opportunity to be heard,'" Olympic Forest Prods., Inc. v. Chaussee Corp., 82 Wash.2d 418, 422, 511 P.2d 1002 (1973) (quoting Grannis v. Ordean, 234 U.S. 385, 394, 34 S.Ct. 779, 58 L.Ed. 1363 (1914)), and "`notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" Olympic, 82 Wash.2d at 422, 511 P.2d 1002 (quoting Mullane v. Cent. *786 Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950)). Thus, at a minimum, the due process clause of the Fourteenth Amendment of the United States Constitution demands that a deprivation property be preceded by "`notice and opportunity for hearing appropriate to the nature of the case.'" Olympic, 82 Wash.2d at 422, 511 P.2d 1002 (quoting Mullane, 339 U.S. at 313, 70 S.Ct. 652). Moreover, this opportunity "`must be granted at a meaningful time and in a meaningful manner.'" Olympic, 82 Wash.2d at 422, 511 P.2d 1002 (quoting Armstrong v. Manzo, 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965)).
¶ 29 As an initial matter, although allowing L & I to obtain reimbursement from the proceeds of a third party recovery is meant to ensure that injured workers do not make a double recovery, the legislature expressly sanctioned some form of double recovery for injured workers when it drafted RCW 51.24.060(1) to provide the injured worker with 25 percent of the total recovery before any reimbursement to L & I was calculated. This formula allows for an injured worker to retain 25 percent of the proceeds after reasonable attorney fees are paid, regardless of whether L & I is fully reimbursed for funds it has paid for medical expenses, lost wages, and the like. Furthermore, injured workers who are not aware that L & I may access their pain and suffering damages following a settlement agreement with a third party would not know to take care to structure their settlement awards accordingly. Specifically, if injured workers were aware of this risk, they would structure their third party settlements to ensure that the medical benefits and lost wages portion of their settlement was sufficient to reimburse L & I entirely, and, thus, preserve the portion compensating them for pain and suffering for the purpose intended.
¶ 30 The award here was obtained via settlement. But we note that had a jury granted Tobin damages to compensate him for his pain and suffering, under L & I's reading of the disbursement statute, it would have the authority to subvert the jury's verdict and divert funds it awarded as compensation for pain and suffering to pay prior medical expenses and lost wages. Here, RCW 51.24.060 does not provide injured workers with sufficient notice that damages so earmarked are assets that may be attached to reimburse and relieve L & I of its responsibility to pay compensation which the injured worker is due for his other losses.
Attorney Fees
¶ 31 Tobin asks this court to uphold the superior court's award of attorney fees under former RCW 51.52.130 (1993) and to award him attorney fees on appeal under RAP 18.1. L & I argues that, because it should prevail on appeal, Tobin is not entitled to attorney fees at the superior court level or on appeal. We affirm the trial court's award of attorney fees and award Tobin reasonable attorney fees on appeal in an amount to be determined by the commissioners of this court on his timely compliance with RAP 18.1.
¶ 32 Affirmed.
We concur: VAN DEREN, A.C.J., and PENOYAR, J.
NOTES
[1] The parties stipulated to the facts when they appeared before the Board of Industrial Insurance Appeals.
[2] RCW 51.24.030(1) states in relevant part:

If a third person, not in a worker's same employ, is or may become liable to pay damages on account of a worker's injury for which benefits and compensation are provided under this title, the injured worker or beneficiary may elect to seek damages from the third person.
[3] Under RCW 51.24.060(1)(a)-(c), the recovery is divided and distributed in the following order: (1) attorney fees and costs are paid, (2) 25 percent of the balance goes to the injured employee or beneficiary, and (3) L & I "shall be paid the balance of the recovery made, but only to the extent necessary to reimburse [L & I] for benefits paid." RCW 51.24.060(1)(c). Any remaining balance is paid to the employee or beneficiary. RCW 51.24.060(1)(d).
[4] L & I does not "distribute" the actual proceeds of an injured worker's tort recovery. Rather, once L & I learns that a recovery has been made, it calculates the distribution according to RCW 51.24.060(1)'s formula and issues an order setting forth the parties' respective shares. The "person to whom any recovery is paid," generally the plaintiff's attorney, must then disburse the funds according to the distribution order. See RCW 51.24.060(5), (6).
[5] In Flanigan, our Supreme Court suggested that non-economic damages other than loss of consortium, such as pain and suffering, could also be excluded from distribution. See 123 Wash.2d at 423, 869 P.2d 14.
[6] As an initial matter, L & I argues that Flanigan was wrongly decided. But Flanigan is an opinion of our Supreme Court and is, therefore, binding precedent upon this court.
[7] Tobin urges us to disregard the legislative history that L & I attached to its brief and all related arguments as "outside the record." But a party need not have filed the legislative history of a statute with the trial court and, thus, it can be properly appended to a party's appellate brief. But this court may take judicial notice of the legislative history of a statute. ER 201(b); see also Clean v. State, 130 Wash.2d 782, 809, 928 P.2d 1054 (1996) (citing State ex. rel. Humiston v. Meyers, 61 Wash.2d 772, 779, 380 P.2d 735 (1963)); but cf. State v. Bernard, 78 Wash.App. 764, 768-69, 899 P.2d 21 (1995).
[8] L & I also argues that our decision in Gersema v. Allstate Insurance Company, 127 Wash.App. 687, 112 P.3d 552 (2005), "overlooked the fact that [RCW 51.24.030(5)] limited Flanigan['s loss of consortium holding]" because we "did not have access to the legislative material[s]" which L & I appended to its brief. Br. of Appellant at 33. But, as discussed above, the legislative materials on which L & I relies do not show that the legislature intended to so limit the third party recovery statute.
[9] L & I also points us to testimony from the Washington State Trial Lawyers' Association and the "business community" in support of the bill. Br. of Appellant at 25. But again, testimony in support of a bill is not suggestive of the legislature's intent. See Wilmot v. Kaiser Aluminum & Chem. Corp., 118 Wash.2d 46, 64, 821 P.2d 18 (1991). In addition, L & I points us to the Fiscal Note for S.B. 5399, which stated that Flanigan excluded damages for loss of consortium "and created a potential for attempts at excluding other forms of damages" and that "without passage of this amendment, piecemeal attempts to exclude various forms of damages . . . will be made." Fiscal Note for S.B. 5399 (1995). Although these statements illuminate the history behind the proposed amendment, they do not suggest that the legislature intended to allow L & I to be reimbursed from a portion of a third party settlement for which it did not, and will never, compensate the injured worker.