239 P.3d 544 (2010)
Jim A. TOBIN, Respondent,
v.
DEPARTMENT OF LABOR & INDUSTRIES, Petitioner.
No. 81946-7.
Supreme Court of Washington, En Banc.
Argued November 16, 2009.
Decided August 12, 2010.
Michael King Hall, Jay Douglas Geck, Office of the Attorney General, Olympia, WA, for Petitioner.
*545 David W. Lauman, Attorney at Law, Tacoma, WA, Philip Albert Talmadge, Talmadge/Fitzpatrick, Tukwila, WA, for Respondent.
Kristopher Ian Tefft, Olympia, WA, amicus counsel for Association of Washington Business & Washington Self-Insurers Association.
Bryan Patrick Harnetiaux, Spokane, WA, George M. Ahrend, Ahrend Law Firm, P.L.L.C., Moses Lake, WA, amicus counsel for Washington State Association for Justice Foundation.
Teri L. Rideout, Rumbaugh Rideout Barnett & Adkins, Tacoma, WA, amicus counsel for Washington State Labor Council AFL-CIO.
MADSEN, C.J.
¶ 1 Jim Tobin, an injured worker, received workers' compensation benefits and settled a lawsuit with the responsible third party, as authorized by Washington's third party recovery statute, chapter 51.24 RCW. A portion of the settlement funds was designated "pain and suffering" damages. Citing its authority under the statute to seek reimbursement for benefits paid, the Department of Labor and Industries (Department or L & I) used the entire settlement sum in its reimbursement calculation and the Board of Industrial Insurance Appeals (Board) affirmed. Tobin appealed, and the trial court reversed. The Court of Appeals affirmed the trial court, holding that the Department had not compensated Tobin for pain and suffering. We agree and hold that chapter 51.24 RCW does not authorize the Department to seek reimbursement of damages awarded for pain and suffering. Accordingly, we affirm.

FACTS
¶ 2 In June 2003, while working for Saybr Contractors, Inc., Tobin was injured when a crane boom, operated by a third party, swung unexpectedly and crushed him against a post. The Department accepted Tobin's subsequent workers' compensation application and paid him time loss compensation and medical benefits.
¶ 3 In March 2005, the Department determined that Tobin was "totally and permanently disabled" and began paying pension benefits. Tobin brought a lawsuit against the third party responsible for the accident, and in September 2005 settled for $1.4 million in damages, $793,083.16 of which was categorized as pain and suffering.
¶ 4 On September 29, 2005, the Department issued an order informing Tobin that it planned to seek reimbursement for workers' compensation benefits it had paid to Tobin, and that his $1.4 million award would be distributed under RCW 51.24.060(1). The Department's distribution calculation included the $793,083.16 that Tobin's settlement had designated for pain and suffering.
¶ 5 Tobin appealed the Department's distribution calculation to the Board. He argued the Department should not have included the $793,083.16 pain and suffering damages in its recovery figure used to calculate distribution of his third party settlement award. Tobin reasoned that because the Department never compensated him for pain and suffering, it could not seek reimbursement from the pain and suffering portion of his award. Tobin also argued that including his pain and suffering damages in the distribution formula amounted to an unconstitutional taking. The Board rejected Tobin's position and upheld the Department's decision.
¶ 6 Tobin appealed to the superior court, which reversed the Board. The superior court relied on Flanigan v. Department of Labor & Industries, 123 Wash.2d 418, 423-24, 869 P.2d 14 (1994), to hold that the Department can be reimbursed only for benefits paid and that the Department had not compensated Tobin for pain and suffering.
¶ 7 The Department appealed to the Court of Appeals, which affirmed the superior court after concluding that "L & I did not, and will never, compensate Tobin for his pain and suffering, therefore it cannot be `reimbursed' from funds designated to compensate him for his pain and suffering." Tobin v. Dep't of Labor & Indus., 145 Wash.App. 607, 616, 187 P.3d 780 (2008) (citing Flanigan, 123 Wash.2d at 426, 869 P.2d 14). The Court of Appeals reasoned that "[b]ecause the legislative *546 history does not provide evidence that the legislature intended to allow L & I to access the pain and suffering portion of a third party recovery to reimburse it for money it paid to compensate an injured worker's other losses, i.e., medical expenses, its argument fails." Tobin, 145 Wash.App. at 618, 187 P.3d 780.
¶ 8 The Court of Appeals went on to address Tobin's takings argument, reframing the issue as a due process notice violation. The court observed that "RCW 51.24.060 does not provide injured workers with sufficient notice that damages ... earmarked [as `pain and suffering' in a settlement or jury award] are assets that may be attached to reimburse and relieve L & I of its responsibility to pay compensation which the injured worker is due for his other losses." Id. at 620, 187 P.3d 780. Based on the absence of notice in the statute, the court held that Tobin's right to due process under the Washington Constitution was violated. Id. at 618, 187 P.3d 780; Const. art. I, § 16.
¶ 9 The Court of Appeals awarded Tobin reasonable attorney fees on review. Tobin requests attorney fees pursuant to RAP 18.1 and RCW 51.52.130 for the appeal in this court.

ANALYSIS
¶ 10 The central issue in this case is whether chapter 51.24 RCW authorizes the Department to include Tobin's pain and suffering damages in the distribution calculation. In order to answer this question, we must discuss the basic history and framework of Washington workers' compensation law, our decision in Flanigan, 123 Wash.2d 418, 869 P.2d 14, and the meaning of a post-Flanigan legislative amendment, RCW 51.24.030(5).
¶ 11 Washington State has abolished workplace injury torts and established Title 51 RCW, the workers' compensation statutes. RCW 51.04.010. Under the statutes, an injured worker generally may not bring a suit in tort, but is instead limited to recovering workers' compensation benefits from the Department. RCW 51.04.060 (describing benefits and burdens of statute as mandatory, exclusive remedy).
¶ 12 The third party recovery statutes, chapter 51.24 RCW, provide an exception. An injured worker is permitted to sue "a third person, not in the worker's same employ [who] is or may become liable to pay damages on account of a worker's injury." RCW 51.24.030(1).
¶ 13 "[A]ny recovery" obtained from a third party suit "shall be distributed" according to the statute's distribution formula. RCW 51.24.060(1). The distribution formula requires payment in the following order: (a) attorney fees and costs, (b) 25 percent to the injured worker free of any claim by the Department, (c) to the Department "the balance of the recovery made, but only to the extent necessary to reimburse [the Department] for benefits paid" and (d) to the injured worker "[a]ny remaining balance." Id.
¶ 14 In Flanigan, 123 Wash.2d 418, 869 P.2d 14, we held that "recovery" excludes damages for loss of consortium, and in dicta, suggested that other noneconomic damages, such as pain and suffering, may also be excluded. Id. at 423, 426, 869 P.2d 14. We observed that the workers' compensation statute makes no statement clearly defining the types of damages that benefits are supposed to compensate for leaving the court to interpret the legislature's intent.
¶ 15 In Flanigan we noted that the Department uses "a lesser percentage of the employee's salary" to calculate benefits. Id. at 423, 869 P.2d 14 (citing RCW 51.32.050,.060, .090). As such, we found the Department did not pay the claimant any benefits for the purpose of compensating for loss of consortium. Id. Referencing the language of RCW 51.24.060(1)(c), we concluded that where the Department has not paid out benefits for a type of damages, it cannot seek reimbursement from that type of damages. Id. at 426, 869 P.2d 14. We also relied on the dictionary definition of "reimburse," a term not defined by the statute, to support this conclusion. Id. We held that "recovery" excludes damages for loss of consortium and in dicta suggested that other noneconomic damages, such as pain and suffering, may also be excluded. Id. at 423, 426, 869 P.2d 14.
*547 ¶ 16 After Flanigan, the legislature amended the statute to define "recovery" as "all damages except loss of consortium." RCW 51.24.030(5). The amendment appears to codify the holding of Flanigan. However, the parties debate whether it does more. The Department argues that the legislature also intended to limit the reasoning of Flanigan to loss of consortium damages. Tobin disputes this interpretation and argues that the reasoning of Flanigan "can be extended to third party recoveries of pain and suffering damages." Resp't's Answer to Pet. for Review at 7.
¶ 17 The Department references the plain language of the amendment and argues that interpreting pain and suffering as excluded from recovery is to rewrite the statute's definition of "recovery" as "all damages except loss of consortium, and pain and suffering." Br. of Appellant [L & I] at 3. The Department argues that the court may not rewrite the amended statute in this manner. Left with the plain language of the amendment, the court has an "either or" choice. Pain and suffering is not "loss of consortium"; therefore it must be included in "recovery."
¶ 18 Tobin counters that RCW 51.24.030, including the amendment, should not be read in isolation, but in context with RCW 51.24.060(1)(c), which gives the Department access to recovery "only to the extent necessary to reimburse the department ... for benefits paid." RCW 51.24.060(1)(c); Resp't Tobin's Suppl. Br. at 8 (citing Cockle v. Dep't of Labor & Indus., 142 Wash.2d 801, 807, 16 P.3d 583 (2001)). This argument is particularly compelling because (i) Flanigan relied on this section of the statute to support its reasoning and (ii) the legislature did not alter this section.
¶ 19 We agree with Tobin that if the legislature intended to limit the reasoning of Flanigan, it could have clearly expressed its intent by defining "recovery" to include all noneconomic damages except for loss of consortium. Alternatively, it could have clearly expressed which types of damages the statute is meant to provide compensation for by defining the term "reimburse." It did not. Accordingly, we conclude the legislature intended to codify the holding of Flanigan and left the reasoning of Flanigan undisturbed.
¶ 20 In Flanigan this court emphasized that the statute's calculation of benefits involves only a percentage of salary and makes no explicit reference to any other category of damages. RCW 51.32.050, .060, .090. Following this reasoning, the benefits calculation does not involve pain and suffering any more than it does loss of consortium.
¶ 21 The Department argues, though, that extending Flanigan to exclude reimbursement for pain and suffering creates conceptual difficulties. The Department argues that Tobin will receive pension benefits for the rest of his natural life, rather than for the rest of his working life or until he reaches retirement age. Thus, the Department argues, benefits may be viewed as representing more than medical expenses and lost wages. The Department cites to Arthur Larson's treatise, explaining that "[a] compensation system, [is] unlike a tort recovery, [and] does not pretend to restore to the claimant what he or she has lost" but instead grants the claimant a sum certain on which to live. 1 Arthur Larson, Larson's Workers' Compensation Law § 1.03[5] (2009).
¶ 22 A form of Larson's argument, that reimbursement under the statute should be viewed broadly rather than separated into damage types, was urged by the dissent in Flanigan, but the majority found that other considerations outweighed this argument. Flanigan, 123 Wash.2d at 430, 869 P.2d 14 (Madsen, J., dissenting) ("the Act does not distinguish based on the nature of the damages which flow from the worker's injury"). We adhere to our position in Flanigan.
¶ 23 The Department raises another concern that arises when Flanigan is applied in the context of pain and suffering. Specifically, the Department points out that Tobin's third party claim settled for $1.4 million. The amount was allocated as follows: $29,326.84 for medical expenses, $14,647.00 for future medical expenses, $562,943.00 for total wage loss (past and future), and $793,083.16 for pain and suffering. The Department notes the category of pain and suffering constitutes the largest amount (over $230,000.00 more than total wages lost) *548 and represents approximately 57 percent of the total award. The Department argues that when a large dollar amount is allocated to pain and suffering, the specter of fraud or collusion may arise. Moreover, the Department says, if Tobin prevails and similar cases follow in his wake, large allocations to pain and suffering will have a significant impact on the Department's fund and potentially its solvency.
¶ 24 Tobin recognizes that the solvency of the fund is a legitimate consideration but argues that it is not unreasonable to limit the Department's recovery to reimbursement for benefits actually paid. Tobin cites Wilson v. State, 142 Wash.2d 40, 56, 10 P.3d 1061 (2000), in which the dissent argued that considering the impact of a decision on the replenishment of the Medicaid fund is a legitimate concern, but fund replenishment should still be limited to those damage types that the fund actually paid out as reimbursement. The same view expressed in this dissent was later adopted by the United States Supreme Court in Arkansas Department of Health and Human Services v. Ahlborn, 547 U.S. 268, 126 S.Ct. 1752, 164 L.Ed.2d 459 (2006). We do not find concerns over solvency sufficient to upset our interpretation of the statute.
¶ 25 In regard to concerns about collusion, fraud was a concern in Flanigan as well, but the court ultimately decided that other considerations outweighed worries over fraud in the context of loss of consortium. Flanigan, 123 Wash.2d at 429, 869 P.2d 14 (Andersen, C.J., dissenting) ("majority's decision also opens the door to abuse and manipulation... [i]n the settlement context, [where] parties may allocate the recovery ... in order to defeat the funds' reimbursement right"). Moreover, the Department has presented no evidence that Tobin engaged in any fraud or collusion in this case. We are not convinced that general concerns over fraud are sufficient to upset our interpretation of the statute.
¶ 26 For the reasons discussed above, we hold that chapter 51.24 RCW does not authorize the Department to subject pain and suffering damages to its reimbursement calculation.

Takings and Due Process
¶ 27 Tobin argues that his pain and suffering damages, as the liquidated form of a chose in action, are his private property. Resp't Tobin's Suppl. Br. at 16; Resp't's Answer to Pet. for Review at 12-13 (citing RCW 4.08.080; Woody's Olympia Lumber, Inc. v. Roney, 9 Wash.App. 626, 513 P.2d 849 (1973); In re Marriage of Brown, 100 Wash.2d 729, 675 P.2d 1207 (1984)). He further argues if the statute subjects his private property to the distribution calculation it is a regulatory taking without due process of law in violation of the United States Constitution and Washington State Constitution. Resp't Tobin's Suppl. Br. at 16 (citing CONST. art. I, § 16; U.S. CONST. amend. 14, § I).
¶ 28 Tobin's takings argument is in the alternative. He states that the Department's interpretation of the statute is what renders the statute unconstitutional. Since we hold that the Department lacks authority under the statute to include Tobin's pain and suffering damages in its distribution calculation, and must reimburse Tobin for any funds wrongfully withheld, we need not reach Tobin's takings claim.
¶ 29 Nevertheless, we think one point with regard to the Court of Appeals' discussion of due process is important enough to require clarification. The Court of Appeals held RCW 51.24.060 violates due process because it provides the injured worker with inadequate notice that his recovery from a third party tortfeasor may be subject to department distribution. Even if the Court of Appeals were correct, ambiguity in a statute triggers the need for court interpretation, not a finding that the statute violates substantive due process. E.g., State v. J.P., 149 Wash.2d 444, 450, 69 P.3d 318 (2003).

Attorney Fees
¶ 30 Tobin also requests attorney fees pursuant to RAP 18.1 and RCW 51.52.130. The Department concedes that if Tobin prevails on appeal, he is entitled to attorney fees under RCW 51.52.130. The trial court found Tobin entitled to attorney *549 fees if and when the accident fund or medical aid fund is affected. Clerk's Papers at 54. The Court of Appeals affirmed the trial court's award and awarded additional attorney fees on appeal.
¶ 31 Under RCW 51.52.130, where a worker appeals a decision of the Board of Industrial Insurance Appeals, he is entitled to fees and costs if (a) the Board's decision is "reversed or modified" and (b) "the accident fund or medical aid fund is affected by the litigation." RCW 51.52.130. In an appeal by the Department, the worker is entitled to fees and costs if "the worker['s] ... right to relief is sustained." Id. In both instances, the worker is entitled to "the attorney's fee fixed by the court, for services before the court only, and the fees of medical and other witnesses and the costs shall be payable out of the administrative fund of the department." Id. RAP 18.1 details procedural requirements for a party requesting attorney fees.
¶ 32 Tobin requested fees and costs in his brief pursuant to RAP 18.1. In light of our holding, Tobin has prevailed before this court. Our decision will directly affect the fund by reducing the amount the Department may recover as reimbursement. Tobin is therefore entitled to attorney fees and costs for his appeal to the trial court. Our decision also sustains Tobin's relief secured by the trial court and Court of Appeals. Thus, he is also entitled to attorney fees and costs incurred before the Court of Appeals and this court.

CONCLUSION
¶ 33 The legislature amended the definitional section of the statute that codified the explicit holding of Flanigan: the term "recovery" excludes third party damages for "loss of consortium." However, the legislature did not revise RCW 51.24.060(1)(c), the section restricting the Department to recovery "to the extent necessary ... for benefits paid" or clearly define what types of damages the statute intends to provide compensation for. Because Flanigan's reasoning rested on this unaltered section of the statute, damages for "pain and suffering," like loss of consortium, constitute noneconomic damage that the workers' compensation statutes do not compensate for. The Department did not pay out benefits for pain and suffering; therefore it cannot be "reimbursed" from amounts recovered for pain and suffering. We hold that an award for pain and suffering may not be used by the Department in its distribution calculation.
¶ 34 We affirm the Court of Appeals.
WE CONCUR: CHARLES W. JOHNSON, GERRY L. ALEXANDER, RICHARD B. SANDERS, TOM CHAMBERS, SUSAN OWENS, and DEBRA L. STEPHENS, Justices.
FAIRHURST, J. (dissenting).
¶ 35 Today the majority shrinks the word "all" beyond recognition. The third party recovery statute, chapter 51.24 RCW, a part of the Industrial Insurance Act (IIA), Title 51 RCW, defines "`recovery'" as "all damages except loss of consortium." RCW 51.24.030(5) (emphasis added). The majority concludes, however, that this definition is not broad enough to include noneconomic damages. Unlike the majority, I cannot be so dismissive of the IIA's text, structure, underlying purposes, and legislative history.

I. THIRD PARTY RECOVERY UNDER THE IIA
¶ 36 The word "recovery" plays an essential role in the IIA's third party recovery statute, and this role must be fully understood before the word is interpreted. Once a settlement is reached or a jury awards damages, the IIA requires the Department of Labor and Industries (L & I) to order distribution of the third party recovery. The distribution plan for third party recoveries won by L & I is provided in RCW 51.24.050(4)[1] *550 and, for those by the injured worker, in RCW 51.24.060(1).[2] These plans are nearly identical, and the term "recovery" is crucial to defining them. Under both, "[a]ny recovery" is subject to a four-tiered distribution. RCW 51.24.050(4), .060(1) (emphasis added). First, an amount is set aside to pay for the legal expenses of pursuing the action, RCW 51.24.050(4)(a), .060(1)(a). Second, "twenty-five percent of the balance" is then distributed to the injured worker. RCW 51.24.050(4)(b), .060(1)(b). This amount is calculated by multiplying 0.25 times the balance, which is the difference between the recovery and the distribution for costs and attorney fees. Third, L & I receives an amount to reimburse it for the benefits already paid to the injured worker while awaiting the recovery. RCW 51.24.050(4)(c),.060(1)(c). L & I is not fully reimbursed, however, because its claim is reduced by its proportionate share of the costs and attorney fees. Id. Fourth, the injured worker receives the remaining balance. RCW 51.24.050(4)(d), .060(1)(d).
¶ 37 Through this remaining balance award, the term "recovery" has a significant indirect effect. If the size of the recovery is large enough to yield a remaining balance award, the distribution plans require L & I to suspend future benefit payments, at least temporarily. RCW 51.24.050(5), .060(1)(e). L & I must restart benefit payments when the total amount of benefits that L & I would have paid exceeds the amount of a statutorily defined offset. RCW 51.24.050(5), .060(1)(e). Under RCW 51.24.050(5), the offset is equal to the amount of the remaining balance *551 award distributed to the injured worker. Under RCW 51.24.060(1)(e), the offset is the amount of the remaining balance award distributed to the worker, subtracted by the "proportionate share of the costs and reasonable attorneys' fees in regards to the remaining balance," which means L & I shoulders a fair share of the costs and attorney fees. Thus, the remaining balance award under RCW 51.24.050(4)(d) and .060(1)(d) is the basis for an offset against L & I's liability for future benefit payments. If the size of the recovery is reduced because we are deducting noneconomic damages, the effect is less money for the remaining balance award and the corresponding offsets, and so L & I's liability for future benefit payments will be greater.
¶ 38 In sum, the term "recovery" defines the entire scope of the distribution plans described in RCW 51.24.050(4) and .060(1). The term "recovery" indirectly determines the size of the remaining balance award issued under RCW 51.24.050(4)(d) and.060(1)(d) and therefore the amount of future benefit entitlements that will be offset under RCW 51.24.050(5) and .060(1)(e).

II. THE STATUTORY DEFINITION OF "RECOVERY"
¶ 39 The most obvious flaw in the majority's interpretation is its belief that if the legislature really wanted to say all damages, then the legislature would not have used just the word "all." According to the majority, the legislature "could have clearly expressed its intent by defining `recovery' to include all noneconomic damages except for loss of consortium." Majority at 547. True, the legislature theoretically could have chosen that verbose wording to express its intent. But the legislature was equally free to use the more succinct language it chose, "For the purposes of this chapter, `recovery' includes all damages except loss of consortium." RCW 51.24.030(5). The legislature should never have to provide an exhaustive list of each thing encompassed by the word "all."
¶ 40 I would read the statute according to its plain meaning. By modifying the word "damages" with the adjective "all," RCW 51.24.030(5) necessarily includes noneconomic damages within its ambit. Of course, RCW 51.24.030(5) makes an exception for "loss of consortium." But it is a well settled rule that "[e]xpress exceptions in a statute suggest the Legislature's intention to exclude other exceptions." Nat'l Elec. Contractors Ass'n v. Riveland, 138 Wash.2d 9, 17-18, 978 P.2d 481 (1999). Loss of consortium damages is the only express exception. By excluding only loss of consortium damages, the legislature intended to include all other noneconomic damages, including pain and suffering, within the definition of "recovery."

III. THE LEGISLATIVE RESPONSE TO FLANIGAN

¶ 41 The majority's reliance on Flanigan v. Department of Labor & Industries, 123 Wash.2d 418, 869 P.2d 14 (1994) is misplaced. The Flanigan court held that L & I's right to reimbursement "does not extend to a spouse's third party recovery for loss of consortium." Id. at 420, 869 P.2d 14. As the majority recognizes, Flanigan, "in dicta," also "suggested that other noneconomic damages, such as pain and suffering, may also be excluded." Majority at 546. This dictum loomed large.
¶ 42 The legislature responded immediately, passing an amendment in the next session that defined "recovery" as "all damages except loss of consortium." Laws of 1995, ch. 199, § 2 (codified at RCW 51.24.030(5)). This new definition affected the meaning of 18 separate provisions of chapter 51.24 RCW. See RCW 51.24.030(2) (using "recovery" twice), .040 (once), .050(4) (once), .050(4)(a) (once), .050(4)(b) (once), .050(5) (once), .060(1) (once), .060(1)(c) (once), .060(1)(c)(ii) (once),.060(1)(e) (twice), .060(2) (once), .060(5) (four times), and .060(6) (once). Among these is RCW 51.24.060(1)(c), the very provision on which Flanigan rested and which the majority wrongly contends "the legislature did not alter." Majority at 547. Rather than give effect to this sweeping response to Flanigan, the majority insists that nothing has changed. The majority is incorrect.
¶ 43 "The Legislature `does not engage in unnecessary or meaningless acts, and we presume some significant purpose or objective *552 in every legislative enactment.'" In re Recall of Pearsall-Stipek, 141 Wash.2d 756, 769, 10 P.3d 1034 (2000) (quoting John H. Sellen Constr. Co. v. Dep't of Revenue, 87 Wash.2d 878, 883, 558 P.2d 1342 (1976)). If the legislature's objective was to keep the meaning of the third party recovery statute unchanged after Flanigan, as the majority holds it was, then the 1995 amendment was unnecessary and meaningless. The rules of statutory interpretation eliminate the need for the legislature to spend its time codifying this court's holdings. See, e.g., City of Federal Way v. Koenig, 167 Wash.2d 341, 348, 217 P.3d 1172 (2009) ("This court presumes that the legislature is aware of judicial interpretations of its enactments and takes its failure to amend a statute following a judicial decision interpreting that statute to indicate legislative acquiescence in that decision."). If, however, the legislature intended the 1995 amendment to have some significant purpose, as we are compelled to presume, the only possible intention was to reject Flanigan's dicta regarding noneconomic damages, not to merely codify Flanigan's holding.

IV. RECOVERY AND THE IIA'S DISTRIBUTION PLANS
¶ 44 A statutory provision's context and the whole statutory scheme shed light on the provision's meaning, State v. Engel, 166 Wash.2d 572, 578, 210 P.3d 1007 (2009). The context in which "recovery" is used casts further doubt on the majority's analysis. The problem lies again with the majority's application of Flanigan. In Flanigan, the issue was narrowly drawn as whether RCW 51.24.060(1)(c) granted L & I the right to draw a reimbursement for benefits already paid from the loss of consortium damages that an injured worker's spouse received in an action against a third party. Flanigan, 123 Wash.2d at 421, 426, 869 P.2d 14. Holding the answer was "no," the Flanigan court rested its decision on the particular text of RCW 51.24.060(1)(c) ("[L & I] shall be paid the balance of the recovery made, but only to the extent necessary to reimburse [L & I] for benefits paid") and on the theory that workers' compensation benefits do not compensate a spouse for loss of consortium. Flanigan, 123 Wash.2d at 426, 869 P.2d 14. Flanigan is firmly anchored to the text of RCW 51.24.060(1)(c), and the Flanigan court never suggested that its holding related to the meaning of the word "recovery" or to the other elements of the distribution plans set forth in RCW 51.24.050(4) and .060(1).
¶ 45 Still, the majority takes the Flanigan court's interpretation of the word "reimburse," which is found only in RCW 51.24.060(1)(c), and connects it to the word "recovery," which pervades all of chapter 51.24 RCW. Majority at 546-57. There is no justification for taking a single nearby word and using it to override the statutory definition provided in a separate section. In reality, the 1995 amendment decouples the words "reimburse" and "recovery." By responding to Flanigan with a definition for "recovery," the legislature made clear that the scope of the distribution plans does not depend on any link between the type of benefits paid and the type of tort damages recovered. Rather, "all damages except loss of consortium" are in the pool of damages to be drawn from at each step of the distribution plans. RCW 51.24.030(5).
¶ 46 The majority opinion will have harmful effects on the statutory scheme as a whole. In many cases, there will be an inadequate sum of economic damages for fully reimbursing L & I pursuant to RCW 51.24.050(4)(c) and .060(1)(c). That itself is unfortunate, but the real problem lies with L & I's liability for future benefit payments. With the distribution plans denied the full recovery intended by the legislature, a smaller remaining balance distribution goes to the injured worker under RCW 51.24.050(4)(d) and .060(1)(d). Because both RCW 51.24.050(5) and .060(1)(e) use the remaining balance amount to offset future compensation benefits, the offsets will expire and RCW 51.24.050(5) and .060(1)(e) will require L & I to restart benefit payments to the injured worker from the compensation fund much sooner than the legislature intended. The majority undercuts the third party recovery statute's goals of preventing a double recovery and ensuring that the workers' compensation fund "[is] not charged for damages caused by a third party." Maxey v. *553 Dep't of Labor & Indus., 114 Wash.2d 542, 549, 789 P.2d 75 (1990).
¶ 47 All this is illustrated by Tobin's case. Under the majority's interpretation, the noneconomic damages of $793,083.16 are excluded and the economic damages of $606,916.84 are the only recovery. This smaller recovery is filtered through the distribution plan of RCW 51.24.060(1), and a much smaller remaining balance is available to offset L & I's future liability. See infra app. chart 4. After L & I's proportionate share of costs and attorney fees is subtracted from the remaining balance award, the size of the offset is only $164,552.30. Id. With such a small offset, L & I estimates that it will pay Tobin another $398,179.70 in workers' compensation benefits in the future. Id. Under the majority's holding, these future benefits are added to the $80,501.40 that L & I already has paid to Tobin, as well as the $525,532.71 in net recovery from pain and suffering, and the awards of $100,551.21 and $248,305.22 under the distribution plan of RCW 51.24.060(1). Id. In total, Tobin will receive $1,353,070.24 in net compensation. Id. If he had received all of the tort damageseconomic and noneconomicand there were no workers' compensation system, he would have taken home only $927,737.56 out of the $1.4 million recovery, once he paid costs and attorney fees. See infra app. chart 2. The majority thus gives Tobin a windfall of over $400,000, and it comes at the expense of the workers' compensation fund, even though a third party was liable for Tobin's injuries, not the employers that pay into the system. Once similar cases play out, the majority's holding will cause a severe hit to the workers' compensation fund and, ultimately, higher premiums levied on employers that pay into the fund, with all the detrimental economic effects this would cause.[3]
¶ 48 The majority suggests that L & I receives a windfall under my and L & I's view of the statute. This is incorrect. L & I would receive only $53,346.31 as reimbursement for past benefits paid, after paying its proportionate share of costs and attorney fees, while Tobin (1) keeps the $80,501.40 he has already received in workers' compensation benefits, (2) would receive another $136,996.37 in future benefit payments once the offset is exceeded, and (3) would get awards of $231,934.39 and $642,456.86 through the distribution plan of RCW 51.24.060(1). Infra app. chart 3. In total, Tobin would receive $1,091,889.02. Id. Under my interpretation of the legislature's intent, Tobin and others similarly situated would still be better off with the third party recovery statute than without it. Even though the employer was not liable for the injury, the legislature intends that the workers' compensation system provide a safety net to the injured worker in the event that a tort recovery is insufficient.

V. THE LEGISLATIVE HISTORY
¶ 49 The majority does not mention the legislative history, a review of which resolves any lingering doubt about legislative intent. House and senate journals are not the only sources of legislative history. See Lutheran Day Care v. Snohomish County, 119 Wash.2d 91, 104-05, 829 P.2d 746 (1992). A broad range of evidence can be probative of the legislature's intent, including testimony offered to a committee, Cosmopolitan Engineering Group, Inc. v. Ondeo Degremont, Inc., 159 Wash.2d 292, 304, 149 P.3d 666 (2006); committee staff's explanations of a bill's effects, Brown v. State, 155 Wash.2d 254, 265-66, 119 P.3d 341 (2005); discussion among committee members, State v. Heiskell, 129 Wash.2d 113, 119, 916 P.2d 366 (1996); and committee staff memoranda, *554 State v. Turner, 98 Wash.2d 731, 737-38, 658 P.2d 658 (1983). Several such sources from the 1995 legislative session are available.
¶ 50 The fiscal note is particularly revealing. In describing Flanigan, it says the opinion "excepted damages for loss of consortium from [L & I's] right of reimbursement, and created a potential for attempts at excluding other forms of damages from [L & I's] right of reimbursement." Pet. for Review, App. C, Fiscal Note at 7. The fiscal note describes several assumptions of what would occur without passage of the amendment defining "recovery" to include "all damages except loss of consortium." Id. First, "piecemeal attempts to exclude various forms of damages from the Trust Funds' right of reimbursement will be made"; second, "the underlying purpose of the third party chapter which is replenishment of the Trust Funds will be significantly hampered"; and third, "recoveries from third persons will be unpredictable and unreliable in determining actuarial levels of reserve and premium necessary to ensure solvency of the State Fund, leading to potential instability and higher costs of industrial insurance." Id. Strikingly, these are all concerns that the majority dismisses.
¶ 51 In testimony before the House Commerce and Labor Committee, a representative of the Washington State Trial Lawyers Association (WSTLA) (now known as the Washington State Association for Justice) conceded that the 1995 amendment would define the scope of the distribution plans and L & I's right to reimbursement to include noneconomic damages, including pain and suffering. The WSTLA representative explained that WSTLA's policy preference was that pain and suffering damages should not be included in the distribution plans because L & I "does not pay for pain and suffering." Pet. for Review, App. C, Verbatim Report of Proceedings (VRP) (Mar. 22, 1995) at 44. But WSTLA then conceded that the effect and intent of the 1995 amendment was to reject WSTLA's policy preference. WSTLA said, when discussing noneconomic damages for pain and suffering, "We are conceding that [L & I] should benefit in that payment even though they don't pay a nickel for it.... [I]n this bill, we are conceding [L & I] has a lien on it even though they never paid it in the first instance." Id. at 45.
¶ 52 WSTLA's understanding of the amendment accords with L & I's. Testifying to the Senate Committee on Labor, Commerce, and Trade, Mike Watson, the L & I deputy director indicated L & I's intent to "codify that loss of consortium is the only part of a third-party recovery for an injury that would not be subject to repayment of the benefits that L & I or the self-insured employer has paid out." Pet. for Review, App. C, VRP (Jan. 24, 1995) at 31. Watson explained that "[t]here was some language in the Supreme Court decision [Flanigan] that began to get into an analysis of special damages [economic] versus general damages [noneconomic]." Id. at 31-32. Watson said that the Flanigan dicta regarding noneconomic damages "has never taken place in terms of the law or the application of the law in the past, and we would like to make that clear." Id. at 32. When Watson later testified before the House Committee on Commerce and Labor, he explained that the proposed amendment agreed with Flanigan that loss of consortium damages were not appropriate sources of reimbursement for L & I. Pet. for Review, App. C, VRP (Mar. 22, 1995) at 5. But he explained the amendment also limited Flanigan by "making sure that all other damages are subject to the right of lien by [L & I] or [the] self-insurer." Id. According to Watson, to reject the dicta of Flanigan, the amendment would clarify "it isn't necessary to define whether they're economic or noneconomic. If you make the recovery, anything other than loss of consortium is subject to the lien of [L & I] or the self-insured." Id. at 22-23.
¶ 53 Although this committee testimony is not conclusive, it tends to show that the legislature wanted to limit Flanigan. The amendment was requested by L & I. 1 Senate Journal, 54th Leg., Reg. Sess., at 130 (Wash.1995). Hence, L & I's testimony about the amendment's meaning deserves some weight. And it is significant that WSTLA, which opposed the amendment's underlying policy, conceded the amendment would include damages for pain and suffering *555 within the definition of "recovery." This legislative history cannot be explained away, especially when doing so requires a redefinition of the word "all."
¶ 54 For all the reasons stated, I respectfully dissent. I would reverse the Court of Appeals and hold that noneconomic damages for pain and suffering are among the "all damages" described in RCW 51.24.030(5). It is now the legislature's turn to undo what the majority has done.
I CONCUR: JAMES M. JOHNSON, Justice.

APPENDIX[4]

 Chart 1:
 Workers' compensation only
 (no tort recovery)
---------------------------------------------------------------------------------------------
Past workers' compensation benefits received[5] $ 80,501.40
---------------------------------------------------------------------------------------------
Net present value of expected future workers' compensation benefits[6] $ 562,732.00
---------------------------------------------------------------------------------------------
NET TO TOBIN $ 643,233.40
---------------------------------------------------------------------------------------------
 Chart 2:
 Tort recovery only
---------------------------------------------------------------------------------------------
Noneconomic damages to Tobin[7] $ 793,083.16
---------------------------------------------------------------------------------------------
Economic damages to Tobin[8] $ 606,916.84
---------------------------------------------------------------------------------------------
GROSS TO TOBIN $1,400,000.00
---------------------------------------------------------------------------------------------
Tobin's liability for attorney fees and costs[9] $ 472,262.44
---------------------------------------------------------------------------------------------
NET TO TOBIN $ 927,737.56
---------------------------------------------------------------------------------------------
 Chart 3: Dissent's interpretation of IIA's third party recovery statute
 -----------------------------------------
 Attorney
 Fees&
 To Tobin Costs To L&I
-------------------------------------------------------------------------------------------------------------------
 Before Distribution of Recovery
-------------------------------------------------------------------------------------------------------------------
Workers' compensation benefits already paid by L&I to
Tobin[10] $ 80,501.40
-------------------------------------------------------------------------------------------------------------------
 Distribution PlanRCW 51.2J,.060(1)(a)-(d)
-------------------------------------------------------------------------------------------------------------------
Damages classifiable as "recovery" RCW 51.24.030(5)[11] $1,400,000.00
-------------------------------------------------------------------------------------------------------------------
Costs & attorney fees RCW 51.24.060(1)(a)[12] $472,262.44
-------------------------------------------------------------------------------------------------------------------
Claimant's 25% share RCW 51.24.060(1)(b)[13] $ 231,934.39
-------------------------------------------------------------------------------------------------------------------
L&I's lien for benefits already paid $ 80,501.40
-------------------------------------------------------------------------------------------------------------------
L&I's proportionate share of costs & attorney fees
RCW 51.24.060(1)(c)[14] $ 27,155.09
-------------------------------------------------------------------------------------------------------------------

*556
-------------------------------------------------------------------------------------------------------------------
Reimbursement to L&I for benefits paidRCW
51.24.060(1)(c)[15] $53,346.31
-------------------------------------------------------------------------------------------------------------------
The "remaining balance" distribution to TobinRCW
51.24.060(1)(d)[16] $ 642,456.86
-------------------------------------------------------------------------------------------------------------------
 Benefits & Offset After DistributionRCW 51.24.060(1)(e)
-------------------------------------------------------------------------------------------------------------------
The "remaining balance" amount RCW 51.24.060(1)(d)[17] $ 642,456.86
-------------------------------------------------------------------------------------------------------------------
Reduction of offset by prorated share of fees & costs
RCW 51.24.060(1)(e)[18] $ 216,721.23
-------------------------------------------------------------------------------------------------------------------
Net offsetRCW 51.24.060(1)(e)[19] $ 425,735.63
-------------------------------------------------------------------------------------------------------------------
Future pension benefits (L&I's estimation of net
present value)[20] $ 562,732.00
-------------------------------------------------------------------------------------------------------------------
Future pension benefits to be paid after offset exceeded
(net present value)RCW 51.24.060(1)(e)[21] $ 136,996.37
___________________________________________________________________________________________________________________
TOTAL $1,091,889.02 $472,262.44 $53,346.31
-------------------------------------------------------------------------------------------------------------------
 Chart 4: Majority's interpretation of IIA's third party recovery statute
 -----------------------------------------
 Attorney
 Fees &
 To Tobin Costs To L&I
-------------------------------------------------------------------------------------------------------------------
 Before Distribution of Recovery
-------------------------------------------------------------------------------------------------------------------
Workers' compensation benefits already paid by L&I to
Tobin[22] $ 80,501.40
-------------------------------------------------------------------------------------------------------------------
Noneconomic damages[23] $ 793,083.16 $ 525,532.71 $267,550.45
-------------------------------------------------------------------------------------------------------------------
 Distribution PlanRCW 51.24060(1)(a)-(d)
-------------------------------------------------------------------------------------------------------------------
Damages classifiable as "recovery" RCW 51.24.030(5)[24] $606,916.84
-------------------------------------------------------------------------------------------------------------------
Coats & attorney fees RCW 51.24.060(1)(a)[25] $204,711.99
-------------------------------------------------------------------------------------------------------------------
Claimant's 25% share RCW 51.24.060(1)(b)[26] $ 100,551.21
-------------------------------------------------------------------------------------------------------------------
L&I's lien for benefits already paid $80,501.40
-------------------------------------------------------------------------------------------------------------------
L&I's proportionate share of costs & attorney fees
RCW51.24.060(1)(c)[27] $27,152.98
-------------------------------------------------------------------------------------------------------------------
Reimbursement to L&I for benefits paidRCW
51.24.060(1)(c)[28] $53,348.42
-------------------------------------------------------------------------------------------------------------------
The "remaining balance" distribution to TobinRCW
51.24.060(1)(d)[29] $ 248,305.22
-------------------------------------------------------------------------------------------------------------------
 Benefits & Offset After Distribution-RCW51.24.060(1)(e)
-------------------------------------------------------------------------------------------------------------------
The "remaining balance" amount RCW 51.24.060(1)(d)[30] $248,305.22
-------------------------------------------------------------------------------------------------------------------

*557
-------------------------------------------------------------------------------------------------------------------
Reduction of offset by prorated share of fees & costs
RCW 51.24.060(1)(e)[31] $83,752.92
-------------------------------------------------------------------------------------------------------------------
Net offsetRCW 51.24.060(1)(e)[32] $164,552.30
-------------------------------------------------------------------------------------------------------------------
Future pension benefits (L&I's estimation of net present
value)[33] $562,732.00
-------------------------------------------------------------------------------------------------------------------
Future pension benefits to be paid after offset exceeded
(net present value)RCW 51.24.060(1)(e)[34] $ 398,179.70
___________________________________________________________________________________________________________________
TOTAL $1,353,070.24 $472,262.44 $53,348.42
-------------------------------------------------------------------------------------------------------------------

NOTES
[1] The relevant parts of RCW 51.24.050 are as follows:

(4) Any recovery made by the department or self-insurer shall be distributed as follows:
(a) The department or self-insurer shall be paid the expenses incurred in making the recovery including reasonable costs of legal services;
(b) The injured worker or beneficiary shall be paid twenty-five percent of the balance of the recovery made, which shall not be subject to subsection (5) of this section: PROVIDED, That in the event of a compromise and settlement by the parties, the injured worker or beneficiary may agree to a sum less than twenty-five percent;
(c) The department and/or self-insurer shall be paid the compensation and benefits paid to or on behalf of the injured worker or beneficiary by the department and/or self-insurer; and
(d) The injured worker or beneficiary shall be paid any remaining balance.
(Emphasis added.)
[2] The full relevant parts of RCW 51.24.060 are as follows:

(1) If the injured worker or beneficiary elects to seek damages from the third person, any recovery made shall be distributed as follows:
(a) The costs and reasonable attorneys' fees shall be paid proportionately by the injured worker or beneficiary and the department and/or self-insurer: PROVIDED, That the department and/or self-insurer may require court approval of costs and attorneys' fees or may petition a court for determination of the reasonableness of costs and attorneys' fees;
(b) The injured worker or beneficiary shall be paid twenty-five percent of the balance of the award: PROVIDED, That in the event of a compromise and settlement by the parties, the injured worker or beneficiary may agree to a sum less than twenty-five percent;
(c) The department and/or self-insurer shall be paid the balance of the recovery made, but only to the extent necessary to reimburse the department and/or self-insurer for benefits paid;
(i) The department and/or self-insurer shall bear its proportionate share of the costs and reasonable attorneys' fees incurred by the worker or beneficiary to the extent of the benefits paid under this title: PROVIDED, That the department's and/or self-insurer's proportionate share shall not exceed one hundred percent of the costs and reasonable attorneys' fees;
(ii) The department's and/or self-insurer's proportionate share of the costs and reasonable attorneys' fees shall be determined by dividing the gross recovery amount into the benefits paid amount and multiplying this percentage times the costs and reasonable attorneys' fees incurred by the worker or beneficiary;
(iii) The department's and/or self-insurer's reimbursement share shall be determined by subtracting their proportionate share of the costs and reasonable attorneys' fees from the benefits paid amount;
(d) Any remaining balance shall be paid to the injured worker or beneficiary; and
(e) Thereafter no payment shall be made to or on behalf of a worker or beneficiary by the department and/or self-insurer for such injury until the amount of any further compensation and benefits shall equal any such remaining balance minus the department's and/or self-insurer's proportionate share of the costs and reasonable attorneys' fees in regards to the remaining balance. This proportionate share shall be determined by dividing the gross recovery amount into the remaining balance amount and multiplying this percentage times the costs and reasonable attorneys' fees incurred by the worker or beneficiary. Thereafter, such benefits shall be paid by the department and/or self-insurer to or on behalf of the worker or beneficiary as though no recovery had been made from a third person.
(Emphasis added.)
[3] This result will flow partly from the need for L & I to ensure the workers' compensation fund is adequately financed into the future. But this result will also stem from the now inevitable consequences of a pending class action lawsuit. See Davis v. Dep't of Labor & Indus., No. 385279-III, petition for review stayed (Wash.Ct.App. Mar. 31, 2009); Pet. for Review, App. E. The plaintiffs claim, based on the Court of Appeals holding that recovery does not include noneconomic damages, that L & I's past distributions of third party recoveries have overstated reimbursements to L & I and have wrongly denied the plaintiffs benefit payments to which they were entitled. The majority's interpretation of the IIA gives the plaintiffs a strong argument. Any damages awarded to the plaintiffs will, of course, come from the workers' compensation fund, and premiums will rise still further to make up the deficit.
[4] My calculations are consistent with L & Is. See Board Record (BR) at 68, 70-77; Pet. for Review, App. D. And Tobin does not challenge L & I's numbers.
[5] See BR at 71.
[6] See id.
[7] See BR at 70.
[8] See id.
[9] See BR at 71.
[10] See BR at 68, 71.
[11] See id.
[12] See id.
[13] See BR at 68.
[14] See id.
[15] See id.
[16] See id.
[17] See id.
[18] See id.
[19] See BR at 68, 71.
[20] See BR at 71.
[21] This figure is the difference between L & I's expected future liability for pension benefits and the offset provided in RCW 51.24.060(l)(e).
[22] See BR at 68, 71.
[23] See BR at 70; Pet. for Review, App. D.
[24] See id.
[25] See Pet. for Review, App. D.
[26] See id.
[27] See id.
[28] See id.
[29] See id.
[30] See id.
[31] See id.
[32] See id.
[33] See BR at 71.
[34] This figure is the difference between L & I's expected future liability for pension benefits and the offset provided in RCW 51.24.060(1)(e).