112 P.3d 552 (2005)
James W. GERSEMA, Appellant,
v.
ALLSTATE INSURANCE COMPANY, a Self-Insured Employer under Title 51 RCW, and The Department of Labor and Industries, State of Washington, Respondents.
No. 31734-6-II.
Court of Appeals of Washington, Division 2.
May 24, 2005.
William J. Blitz, Office of the Attorney General, Olympia, WA, Christopher Stephen Cicierski, Deborah Janine Lazaldi, Lazaldi Bender & Cicierski, Seattle, WA, for Respondent.
Stanley Jay Rumbaugh, Rumbaugh Rideout & Barnett, Tacoma, WA, for Appellant.
*553 HUNT, J.
¶ 1 James Gersema appeals the trial court's affirmance of the Board of Industrial Insurance Appeals' decision allowing his self-insured employer, Allstate Insurance Company, to offset his potential future industrial insurance benefits against his "excess recovery"[1] from a third party tortfeasor responsible for his industrial injury. Gersema argues that this offset, authorized under RCW 51.24.060, is an unconstitutional taking of his property, namely general damages, for which Allstate has paid him no benefits.
¶ 2 We affirm, holding that (1) RCW 51.24.060 is not unconstitutional, and (2) Gersema's failure to differentiate between general and special damages in his third party tortfeasor settlement permits Allstate to offset his potential future benefits for this injury against Gersema's entire, undifferentiated, excess recovery.

FACTS

I. INDUSTRIAL INSURANCE CLAIM
¶ 3 James Gersema was injured while working for Allstate Insurance Company, a self-insured employer. He had driven an Allstate insured's vehicle to Titus-Will Ford for repairs. While on the Titus-Will premises, he struck his head on a low hanging door header and injured his neck.
¶ 4 Gersema filed an industrial insurance claim for this injury, for which Allstate paid him $35,731.61[2] in industrial insurance medical aid and permanent partial disability benefits. Because Allstate continued to pay Gersema his salary while his claim was open, Allstate paid no time loss compensation for temporary total disability.

II. THIRD-PARTY TORTFEASOR SETTLEMENT
¶ 5 Gersema sued third-party tortfeasor Titus-Will for the same neck injury; they settled this negligence action for $160,000. The settlement agreement neither differentiated between nor specified separate amounts for special and general damages.[3] Rather, the settlement agreement specifically covered "all past and future injuries, damages or losses, whether or not known to the parties... but which may later develop or be discovered in connection with any of the above-referenced incident." Settlement Agreement and Full and Final Release (Settlement) at 1 (emphases added).
¶ 6 Allstate asserted a statutory lien under RCW 51.24.030 for its share of the settlement proceeds as reimbursement for medical and disability benefits it had already paid Gersema for his neck injury. Under RCW 51.24.060, the state Department of Labor and Industry issued a distribution order for the settlement proceeds distributing the $160,000 as follows: $73,416.24 to Gersema; $65,749.32 for attorney fees and costs; and $20,834.44 to Allstate on its statutory lien for past benefits paid to Gersema.[4]
¶ 7 The Department also calculated a statutory excess recovery[5] of $29,366.09[6] for Gersema and ordered as follows:
IT IS FURTHER ORDERED no benefits or compensation will be paid to or on behalf of the claimant ... until such time the excess recovery totaling $29,366.09 has *554 been expended by the claimant ... for costs incurred as a result of the condition(s), injuries, or death covered under this claim.
Appeal Board Record (ABR) at 1. Following RCW 51.24.060(1)(e), the Department authorized Allstate's lien against Gersema's excess recovery to offset any additional future industrial insurance benefits it might pay him arising from the same neck injury. As a result, Gersema could receive no additional, future, workmen's compensation benefits on this claim from Allstate until such benefits exceeded $29,366.09.[7]

III. APPEALS
¶ 8 Gersema appealed the Department's settlement distribution order to the Board of Industrial Insurance Appeals. He argued that the Department's application of RCW 51.24.060(i)(e) resulted in taking his property in violation of his substantive due process constitutional rights under the state[8] and federal[9] constitutions. Deciding it lacked authority to rule on the constitutionality of the statute, the Board affirmed the Department's order.
¶ 9 Gersema appealed to Pierce County Superior Court, which denied his motion for summary judgment and affirmed the Board's order.
¶ 10 Gersema now appeals to us.

ANALYSIS
¶ 11 Gersema argues that the Department's application of RCW 51.24.060(1)(e) violated his right to substantive due process[10] in that it resulted in an unconstitutional taking of his property, namely his general damages from his settlement with the third party tortfeasor responsible for his workplace injury. Specifically, Gersema argues that because Allstate recovered all industrial insurance benefits it had paid him, the Department unconstitutionally took his property when it allowed Allstate to offset his potential future industrial insurance benefits against his statutorily defined excess recovery. We disagree.
¶ 12 We first address the statutory calculation of Gersema's excess recovery. We then address the constitutionality of the statute and its application here.

I. SETTLEMENT AGREEMENT EXCESS RECOVERY
¶ 13 In addition to filing a workmen's compensation claim for work-related injuries with the Department or a self-insured employer, an injured worker may sue a third party tortfeasor for the same injury that triggered his receipt of industrial insurance benefits. RCW 51.24.030(1).
¶ 14 RCW 51.24.030(3) defines "injury" for workmen's compensation purposes as "any physical or mental condition ... for which compensation and benefits are paid or payable under [the Industrial Insurance Act]." Under the Act, an injured worker cannot receive, and neither the self-insured employer nor the Department pays, benefits for general damages such as pain and suffering and loss of consortium. See Flanigan v. Dep't of Labor & Indus., 123 Wash.2d 418, 423 869 P.2d 14 (1994) (benefits calculations do not take into account non-economic damages such as pain and suffering or a spouse's loss of consortium).
¶ 15 The dispute here, however, arises from Gersema's failure to differentiate industrial insurance compensable special damages and non-compensable general damages in his settlement with Titus-Will.

A. Department's Offset
¶ 16 If an injured worker sues a third party tortfeasor, the Department or self-insured employer may intervene to protect its statutory interest in any damages recovered for the worker's injury to the extent that the Department or employer has paid, or will *555 pay, industrial insurance benefits for the same injury. RCW 51.24.030(2). The statute allows such offset for all damages except loss of consortium. RCW 51.24.030(5).
¶ 17 The Department or self-insured employer exercises its statutory offset with a lien against the employee's third party recovery. As Division One of our court has recently noted:
The purpose of the lien is to protect the state fund by providing for reimbursement and such reimbursement is mandated so that (1) the accident and medical funds are not charged for damages caused by a third party and (2) the worker does not make a double recovery. The purposes of the workers' compensation act would be defeated if the Department's right to reimbursement were {sic} impaired.
Mandery v. Costco Wholesale Corp., 126 Wash.App. 851, 110 P.3d 788, 791 (2005) (quotations omitted).
¶ 18 RCW 51.24.060(1)(a)-(c) establishes a statutory distribution scheme for such recovery. After deducting each recovery recipient's proportionate attorney fees and costs,[11] the injured worker is entitled to 25 percent of the remaining recovery from the third-party tortfeasor. The Department or self-insured employer then receives a share of the recovery in an amount necessary to reimburse it for industrial insurance benefits it has already paid to the injured worker. RCW 51.24.060(1)(c). After this reimbursement for past paid benefits, the remaining proceeds, called "excess recovery," go to the injured worker. RCW 51.24.060(d).
¶ 19 The Department or self-insured employer, however, retains a contingent interest in the injured worker's excess recovery, which it can use to offset any future benefits it may pay to the injured worker under a claim for the same injury. RCW 51.24.060(1)(e). As a result, the worker receives no further industrial insurance benefits unless entitled to future benefits in an amount greater than the excess recovery (minus the Department's or employer's proportional share of costs and attorney fees). RCW 51.24.060(1)(e). Here, the amount of Gersema's statutory excess recovery subject to Allstate's offset is $29,366.09.
¶ 20 Gersema argues that (1) the distribution Allstate has already received from the third-party tortfeasor settlement totally reimbursed Allstate for all industrial insurance benefits it has paid; (2) therefore, Allstate is not entitled to any further offset against the excess recovery; (3) the excess recovery comprises general damages, to which Allstate is not entitled because a self-insured employer is never liable for and never pays general damages[12] under The Industrial Insurance Act (Act)[13]; (4) thus, to allow Allstate to offset future benefits payments against the third-party settlement excess effectively allows Allstate "reimbursement," to which it is not entitled, for Gersema's general damages (which are outside the scope of industrial insurance and which Allstate has never paid to Gersema); and (5) such an offset results in an unconstitutional taking of Gersema's property.[14]
¶ 21 Gersema relies extensively on Flanigan, 123 Wash.2d 418, 869 P.2d 14. In Flanigan, the Supreme Court held that the Department's right of reimbursement does not extend to a spouse's third party recovery for loss of consortium.[15] 123 Wash.2d at 426, 869 P.2d 14. The Court reasoned that allowing the Department to access a spouse's loss of consortium recovery would result in a windfall to the State because the Department had not paid any industrial insurance benefits for this type of loss.[16]Flanigan, 123 *556 Wash.2d at 425-26, 869 P.2d 14. Gersema argues that Flanigan applies to general damages for pain and suffering, for which, like loss of consortium, Allstate has not and will not compensate him.
¶ 22 If Gersema's settlement with Titus Will had clearly allocated some or all of the damages to his pain and suffering, we might agree with his contention that these general damages are not "excess" and, therefore, should receive the same treatment as loss of consortium damages in Flanigan. But such is not the case here. Unlike Flanigan's differentiated award, Gersema received an undifferentiated settlement award for which it is impossible to determine from the record what portion was attributable to general damages, such as pain and suffering, and what portion was attributable to special damages, for which Allstate had already paid Gersema industrial insurance benefits or may pay as future benefits arising from the same neck injury. Thus, Flanigan, with its differentiated award,[17] does not apply.
¶ 23 Instead, we apply and adopt the rationale of Mills v. Dep't of Labor & Indus., 72 Wash.App. 575, 865 P.2d 41, review denied, 124 Wash.2d 1008, 879 P.2d 292 (1994), which involved a similar failure to differentiate a third-party-tortfeasor settlement. In Mills, the parties' failure to allocate a portion of the injured worker's lump-sum recovery to a loss of consortium claim subjected the entire award to the Department's lien for industrial insurance benefits paid or potentially payable to Mills. 72 Wash.App. at 577, 865 P.2d 41. The court reasoned that neither public policy nor the statute compelled the Department to generate such an allocation where the parties themselves have failed to do so. Mills, 72 Wash.App. at 579, 865 P.2d 41. We find this Mills rationale persuasive and adopt it here.
¶ 24 We hold, therefore, that under RCW 51.24.060(1)(e) and RCW 51.24.060(2), All-state is entitled to a lien on the entire remainder of Geresma's excess recovery from the third-party-tortfeasor settlement because the parties failed to differentiate general damages from special damages.

II. CONSTITUTIONALITY OF STATUTE AND ITS APPLICATION

A. Standard of Review
¶ 25 Constitutional issues are issues of law, which we review de novo. State v. Blilie, 132 Wash.2d 484, 489, 939 P.2d 691 (1997). "A court will presume that a statute is constitutional and it will make every presumption in favor of constitutionality where the statute's purpose is to promote safety and welfare, and the statute bears a reasonable and substantial relationship to that purpose." State v. Glas, 147 Wash.2d 410, 422, 54 P.3d 147 (2002). A challenger must prove the statute is unconstitutional beyond a reasonable doubt. Retired Pub. Employee's Council of Wash. v. Charles, 148 Wash.2d 602, 623, 62 P.3d 470 (2003).
¶ 26 A reviewing court should not decide a constitutional issue unless it is absolutely necessary to the determination of the case. State v. Hall, 95 Wash.2d 536, 539, 627 P.2d 101 (1981). Here, as the Department concedes, resolution of the constitutional issue is necessary.[18] We hold that the statute is constitutional as applied.

*557 B. RCW 51.24.060
¶ 27 Division One of our court recently addressed the constitutionality of RCW 51.24.060 in Fria v. Dep't of Labor & Indus., 125 Wash.App. 531, 105 P.3d 33 (2004). That court specifically "reject[ed] Fria's contention that the statutory offset provision violates constitutional protections." 125 Wash. App. at 532, 105 P.3d 33. The court upheld the Department's right to offset any future worker's compensation payment to Fria against his third party recovery for a tort claim arising from the same injury, in the event that he reopened his claim. The Fria opinion does not, however, mention that Fria asserted unconstitutional taking as the basis for his challenge to the statute. Therefore, we now turn to Gersema's unconstitutional taking challenge here.
¶ 28 Gersema asserts that (1) we can and should differentiate between those parts of the settlement recovery that constituted special and general damages using a process of elimination;[19] and (2) after doing so, we should preclude Allstate's lien against the general damages portion of the settlement because to allow such recovery would be giving Allstate his private property ostensibly to "reimburse" it for general damages for which it never has and never will be liable under the Industrial Insurance Act. We decline Gersema's invitation to differentiate the settlement on the record before us.
¶ 29 The Department decided, and we agree (see Analysis, section II, infra) that, because it is undifferentiated, under RCW 51.24.060 the entire third party settlement excess recovery is subject to Allstate's lien for future industrial insurance benefits it may pay Gersema for the same neck injury that was the subject of his industrial insurance claim against Allstate and his third party settlement with Titus-Will. See Mills, 72 Wash.App. at 577, 865 P.2d 41. Moreover, Gersema's settlement agreement with Titus Will specifically covered "all past and future injuries, damages or losses, whether or not known to the parties ... but which may later develop or be discovered in connection with any of the above-referenced incident." Settlement at 1 (emphasis added). Recognizing that Allstate or the Department may have to pay Gersema future disability or medical benefits under the Act if he reopens his claim, this settlement agreement specifically contemplated and sought full release for future injury and medical costs arising from Gersema's neck injury.
¶ 30 Placing a lien on these settlement funds until such time as Gersema's future disability or medical needs are known does not constitute a "taking"[20] of or constraint on Gersema's property. First, Gersema has already received and has access to the excess recovery funds. He is not being deprived of any property in his possession, nor will he have to pay any of these funds to Allstate. Second, unlike a lien on real property, Allstate's lien on the excess third-party recovery neither prevents nor restricts Gersema's use of these funds in any way.
¶ 31 Rather, if Gersema reopens and seeks future industrial insurance benefits for his neck injury, he simply will not receive additional benefits from Allstate until the benefits to which he is entitled exceed $29,366.09, the excess recovery amount that he has already received from Titus Will for this injury. In that event, Allstate will neither receive nor take anything to which it will not be entitled; rather, it will simply receive credit for this amount[21] under the statute, as *558 if Allstate, instead of Titus-Will, had paid Gersema the $29,366.09. Allstate's lien, therefore, is simply not a taking, unconstitutional or otherwise.
¶ 32 We hold, therefore, that RCW 51.24.060 is constitutional and that its application here did not result in a taking of Gersema's property.

III. ATTORNEY FEES
¶ 33 Gersema requests attorney fees pursuant to RAP 18.1(a) and RCW 51.52.130 if he prevails on appeal. Having affirmed the trial court and the Board's order in favor of Respondents, we deny Gersema's request for attorney fees.
¶ 34 Affirmed.
We concur: QUINN-BRINTNALL, C.J., and VAN DEREN, J.
NOTES
[1] See RCW 51.24.060(1)(e).
[2] In his brief of appellant, Gersema states he received $22,786.97 in medical benefits and $25,820.84 in permanent partial disability benefits for a total of $48,607.81. Both Respondents, however, state that Gersema received $22,786.97 in medical benefits and $12,944.64 in disability for a total of $35,731.61 in benefits. For purposes of this opinion, we accept Respondents' lower amount, which works to Gersema's benefit.
[3] Counsel for Titus Will, testified that part of the settlement included general damages. He said he would be speculating if he were to put a specific number on the general damages. Furthermore, no specific amount of general damages appears in the written settlement agreement.
[4] Each recipient, including Allstate, bore a proportional share of the attorney fees. RCW 51.24.060(a)-(d). As a result, Allstate received the amount of industrial insurance benefits it had paid to Gersema minus its proportional share of attorney fees. RCW 51.24.060(a),(c).
[5] See RCW 51.24.060(1)(d)-(e) for calculation of the "remaining balance" or "excess recovery."
[6] The parties do not dispute the computation of the excess recovery subject to offset.
[7] But if Gersema neither seeks nor receives additional industrial insurance benefits for this injury, he will retain the full amount of this excess recovery.
[8] WASH. CONST. art. I, § 3.
[9] U.S. CONST. amend. V, XIV, § 1.
[10] U.S. CONST. amend. V, XIV, § 1; WASH. CONST. art. I, § 3.
[11] The Department and the injured worker pay attorney fees and costs proportionately according to a statutory formula based on their respective recoveries. RCW 51.24.060(a), (c)(ii).
[12] "General damages" compensate for such injuries as pain and suffering. See Flanigan, 123 Wash.2d at 423, 869 P.2d 14.
[13] Title 51 RCW.
[14] U.S. CONST. amend. V, XIV, § 1; WASH. CONST. art. I, § 3.
[15] After the Flanigan decision the legislature amended the Act to exclude loss of consortium from the definition of "recovery." RCW 51.24.030(5).
[16] Industrial insurance under chapter 51.32 RCW does not provide benefits for loss of consortium and RCW 51.24.030(5) expressly excludes loss of consortium damages from third-party judgments susceptible to Department or self-in-sured employer liens.
[17] In Flanigan, the wife recovered $189,000 specifically for her own loss of consortium and $94,468.50 for her husband's estate in economic damages. Flanigan, 123 Wash.2d at 421, 869 P.2d 14.
[18] Allstate initially argues that Gersema's constitutional claim is not ripe for judicial review. Allstate reasons that Gersema has the money in his possession and Allstate is entitled to reimbursement from the excess funds only if in the future Gersema seeks additional benefits for his injury. Until that time, Gersema's claim is not ripe because he has not yet been deprived of property.

The Department, however, concedes that the issue is justiciable. The Department reasons that if Gersema were to abandon his appeal, the distribution order would become final and res judicata would prevent him from challenging the order later. Though it is uncertain that the offset will ever effect Gersema, there is a possibility that he will reopen the claim, at which time the distribution would adversely affect him.
In our view, therefore, it seems prudent to accept the Department's concession of justiciability and to resolve the issue on the merits because this is a question of first impression.
[19] Gersema contends that, from a total recovery of $160,000, there are $48,607.81 in special medical and disability benefits, leaving a general damages award of $111,392.20 that Allstate cannot touch.
[20] Black's defines "take" as "1. To obtain possession or control, whether legally or illegally ... 2. To seize with authority; to confiscate or apprehend... 3. To acquire (property) for public use by eminent domain; (of a governmental entity) to seize or condemn property...." BLACK'S LAW DICTIONARY 1492 (8th ed.2004).
[21] If the parties had apportioned the settlement, more general damages might have been segregated from special damages, thus reducing, or even eliminating, the excess recovery amount subject to Allstate's lien. But on the record here, such calculation is speculative. And, as we noted above, absent apportionment by the parties, we need not allocate any of the third party settlement to general damages sua sponte. See Mills, 72 Wash.App. at 579, 865 P.2d 41.