[No. 41988-2-II.    Division Two.    October 30, 2012.]

DENNIS JONES, *Appellant*, v. THE CITY OF OLYMPIA ET AL., *Respondents*.

*Ronald G. Meyers* (of *Ron Meyers & Associates PLLC*) and *Kenneth B. Gorton*, for appellant.

*Schuyler T. Wallace Jr.* and *William A. Masters* (of *Wallace Klor & Mann PC*), and *Robert M. McKenna, Attorney General*, and *Scott T. Middleton* and *Anastasia R. Sandstrom, Assistants*, for respondents.

¶1 HUNT, J. — Dennis Jones appeals the Board of Industrial Insurance Appeal's final order that the Washington State Department of Labor and Industries (Department) properly calculated the RCW 51.24.060[1] "recovery" and distribution to his employer, the City of Olympia, from his third-party tortfeasor settlement, which order the superior court affirmed. He argues that (1) under *Tobin*,[2] neither the Department nor a self-insured employer is entitled to recover worker's compensation payments from general damages attributable to pain and suffering that an injured worker received in a settlement with a third-party tortfeasor; (2) although his third-party settlement agreement did not expressly allocate any general damages for pain and suffering, the Department erred in calculating and subjecting to statutory "recovery"[3] and distribution his full settlement award of $250,000.00, rather than the $82,188.86 the City had paid him in worker's compensation benefits for time loss compensation and medical benefits; and (3) the Department's calculating the statutory "recovery" and distribution of his settlement in this fashion was an unconstitutional taking of his property under the state and federal constitutions. We affirm.

## FACTS

¶2 In October 2004, City of Olympia fire fighter Dennis Jones sustained an industrial injury during the course of

---

[1] Although the legislature amended portions of this statute in 2011, the changes do not affect the provisions at issue in this case.

[2] *Tobin v. Dep't of Labor & Indus.*, 169 Wn.2d 396, 239 P.3d 544 (2010).

[3] RCW 51.24.030(5).

his employment when he fell into a ditch that had not been properly backfilled. His injury was caused, in part, by the negligence of third parties Capital Christian Center and Life Skills, which owned the property where Jones' injury occurred.[4]

## I. Worker's Compensation and Third-Party Tortfeasor Settlement

¶3 Jones filed a worker's compensation claim for his injuries, which the Department allowed. Jones also sued Capital Christian Center and Life Skills for negligence. In July 2009, Jones settled this negligence claim for a $250,000.00 lump sum, fully releasing Capital Christian Center and Life Skills from all liability for his current and future injuries stemming from the accident.[5] This lump-sum settlement agreement did not differentiate between general and special damages; nor did it separately allocate any portion of the settlement award for Jones' pain and suffering.

¶4 At the time of this settlement agreement, Jones had received $82,188.86 in worker's compensation benefits from the City.[6] Under RCW 51.24.030 and RCW 51.24.060, the

---

[4] Capital Christian Center and Life Skills are joint and severally owned entities.

[5] The settlement agreement provided that Jones agreed to "release" and to "forever discharge" Capital Christian Center and Life Skills and their employees, agents, attorneys, adjustors, and representatives from

> *any and all actions* . . . costs, loss of services, expenses and compensation on account of, or in any way growing out of any and all known and unknown personal injuries and property damage resulting or to result from the incident which occurred at Life Skills['] apartment building.
>
> . . . .
>
> THIS RELEASE includes *all unknown, unforeseen, unanticipated and unsuspected injuries, damages, losses, liability and the consequences thereof resulting from the incident*, as well as those of which the releasing party has knowledge.

Certified Appeal Board Record Ex. 4, at 1 (emphasis added).

[6] This $82,188.86 worker's benefits figure broke down as follows: $29,094.75 in time loss compensation, $43,240.72 in medical care, $7,726.50 in permanent partial disability, and $2,126.89 in vocational costs.

City asserted a statutory lien against Jones' settlement proceeds to reimburse it for having paid these benefits.

¶5 The Department issued a distribution order, calculating the statutorily defined "recovery"[7] and "distribution"[8] of Jones' settlement by using his full $250,000.00 settlement award and distributing it according to RCW 51.24.060's formula. Certified Appeal Board Record (BR) at 29. The Department (1) calculated that the City had paid Jones $82,188.86 in worker's compensation benefits; (2) apportioned $110,333.57 of his $250,000.00 settlement award as attorney fees and costs, $45,916.10 as the City's share,[9] and $93,750.33 as Jones' net share; and (3) provided that $32,868.38 of the settlement was subject to "offset" against potential future additional worker's compensation benefits, resulting in no additional benefits for Jones until the "excess recovery totaling $32,868.38 [had] been expended [by Jones] for costs incurred as a result of the condition(s), injuries, or death covered under this claim." BR at 29-30. These Department calculations left Jones with $93,750.33 as his net share of this third party settlement.

## II. ADMINISTRATIVE AND SUPERIOR COURT APPEALS

¶6 Jones appealed the Department's distribution order to the Board of Industrial Insurance Appeals, arguing that (1) the order should have been based on a "recovery" amount of $82,188.86 (worker's compensation benefits paid), not on his

---

[7] RCW 51.24.030(5) defines "recovery" as including "*all damages* except loss of consortium." (Emphasis added.) The Washington Supreme Court has since held in *Tobin* that damages for pain and suffering are also excluded under this statute. 169 Wn.2d 396.

[8] Under RCW 51.24.060, any recovery from an injured worker's third-party lawsuit is subject to distribution among the injured worker, the parties' attorneys, and the self-insured employer and/or the Department, according to the statutory formula.

[9] The Department's distribution order refers to this figure as the share of the "Self-Insured Employer," namely the City. BR at 29. It appears that this figure represents the recovery distributed under RCW 51.24.060(1)(c) to the "[D]epartment and/or self-insurer."

full $250,000.00 settlement; (2) had the Department based its distribution order on this $82,188.86 recovery figure, the City's share would have been $29,234.81, not $45,916.10; and (3) the Department's order calculating the recovery and distribution of his settlement using his full $250,000.00 award violated *Tobin*[10] because it sought reimbursement from his "pain and suffering" damages, and it constituted an unconstitutional taking of his property under the state and federal constitutions. BR at 106; BR Ex. 7.

¶7 An Industrial Appeals Judge (IAJ) held a telephonic hearing, granted summary judgment to the City, and issued a proposed decision and order affirming the Department's order. The IAJ determined that Jones' third-party settlement agreement (1) did not differentiate between general and special damages; (2) provided no express allocation for pain and suffering; and (3) under existing case law,[11] the Department properly used the full $250,000.00 settlement amount as the recovery figure in its distribution formula.

¶8 The IAJ refused to allocate pain and suffering damages to Jones "after the fact" because it would be "too burdensome" and it would require the Department to "estimate" the specific allocation of general damages when the parties had not expressly provided for such damages in their settlement agreement.[12] BR at 25. The IAJ further

---

[10] When Jones originally filed his appeal with the Board, the Washington Supreme Court had not yet issued its *Tobin* opinion. Thus, the memorandum he submitted to the Board cited our decision in *Tobin v. Department of Labor & Industries*, 145 Wn. App. 607, 187 P.3d 780 (2008), which the Supreme Court later affirmed. The Supreme Court's later analysis in *Tobin* did not differ materially from ours. *See Tobin*, 169 Wn.2d 396.

[11] *Mills v. Dep't of Labor & Indus.*, 72 Wn. App. 575, 865 P.2d 41, *review denied*, 124 Wn.2d 1008 (1994); *Gersema v. Allstate Ins. Co.*, 127 Wn. App. 687, 112 P.3d 552 (2005).

[12] According to James Nylander, the Department's manager of Third Party Programs, the parties to such settlement agreements take into consideration several factors when reaching a final settlement amount, including the credibility and strength of the parties' damages experts; the type, nature, and extent of the injuries claimed; the relative fault of the injured worker and the third-party

ruled that, because Jones' settlement agreement had not allocated general damages for pain and suffering,

> [a]s a matter of law, the *Tobin* case has no applicability to the distribution of Mr. Jones's third-party recovery. The entirety of Mr. Jones's third-party settlement must be included in the distribution formula to repay the Department/self-insured employer for the benefits provided [to] him for his industrial injury.

BR at 25.

¶9 Jones petitioned the full Board for review; the Board denied his request and adopted the IAJ's proposed decision and order. Jones appealed to the superior court. The superior court affirmed the Board's final order. Jones appeals.

## ANALYSIS

¶10 Jones argues that the Department's calculation of the statutory recovery and distribution of his third-party settlement violates the Washington Supreme Court's recent decision in *Tobin* and constitutes an unconstitutional taking of private property under the state and federal constitutions. His first argument fails, and we do not reach the second.

¶11 Jones argues that (1) under *Tobin*, the Department and/or a self-insured employer (here, the City of Olympia) "cannot recover from the portion of a settlement that represents general damages of pain and suffering"; (2) although his settlement agreement did not allocate any portion of the lump-sum award for pain and suffering damages like the settlement agreement in *Tobin*, the general and special damages components of his settlement could be "readily

---

defendants; the risks and costs of litigation; and the relative skill and experience of the worker's and defendants' respective counsel. The Department, therefore, cannot "retroactively guess" how much of a third-party settlement, if any, the parties had intended to allocate for general and special damages if the parties do not specify such amounts in their settlement agreement. BR at 133.

ascertained"[13] because he had received only $82,188.86 in worker's compensation benefits, thus making the remainder of the settlement award his general pain and suffering damages; and (3) because the general and special damages components of his settlement were ascertainable, the Department erred in calculating the recovery and distribution amounts using the full $250,000.00 third-party settlement rather than only the $82,188.86 worker's compensation benefits paid. Br. of Appellant at 9-10. We disagree.

¶12 Where, as here, the parties do not dispute the facts and the only issues remaining are questions of law, our standard of review is de novo. *Mills v. Dep't of Labor & Indus.*, 72 Wn. App. 575, 577, 865 P.2d 41, *review denied*, 124 Wn.2d 1008 (1994). Like the superior court's review of an administrative appeal, our review is based solely on the evidence and testimony presented to the Board. RCW 51.52.115; *Bennerstrom v. Dep't of Labor & Indus.*, 120 Wn. App. 853, 858, 86 P.3d 826 (2004). Although we may substitute our judgment for that of the agency on issues of law, we give great weight to the agency's interpretation of the law it administers. *Bennerstrom*, 120 Wn. App. at 858.

## I. RCW 51.24.060's Recovery and Distribution Scheme

¶13 Washington workers injured during the course of employment are entitled to benefits under the Industrial Insurance Act, Title 51 RCW. If an injured worker also sues a third-party tortfeasor, the Department or self-insured employer may intervene to protect its statutory interest in any damages recovered for the worker's injury to the extent that the Department or employer has paid, or will pay,

---

[13] Jones argues that we can infer the general damages component of his unallocated lump-sum settlement by subtracting the $82,188.86 that he had received in worker's compensation benefits (which he characterizes as his "special damages") from the $250,000.00 total settlement amount. Br. of Appellant at 10. As we explain in more detail later, we have previously rejected a similar argument in *Gersema*, 127 Wn. App. at 698.

industrial insurance benefits for the same injury. RCW 51.24.030(2); *Gersema v. Allstate Ins. Co.*, 127 Wn. App. 687, 693, 112 P.3d 552 (2005).

¶14 If an injured worker seeks damages against a third-party tortfeasor in a separate action, "any recovery" obtained from the third-party lawsuit is subject to "distribut[ion]" to several entities, according to a statutory formula. RCW 51.24.060(1). The "recovery" from a third-party tortfeasor subject to "distribution" under RCW 51.24.060 is statutorily defined as including "*all damages* except loss of consortium." RCW 51.24.030(5) (emphasis added). Also excluded from this statutory definition of "recovery" and, therefore, not subject to distribution under RCW 51.24.060, are pain and suffering damages. *Tobin*, 169 Wn.2d at 404. At issue here is whether Jones' failure to allocate a portion of his third-party settlement to pain and suffering damages subjects the entire settlement amount to statutory recovery and distribution under the statutory scheme.

¶15 The third-party recovery subject to statutory distribution is divided and distributed in the following order: (1) attorney fees and costs; (2) 25 percent to the injured worker or beneficiary; (3) the balance of the recovery to the Department and/or self-insured employer, but only to the extent necessary to reimburse the Department and/or self-insured employer for benefits paid; and (4) any remaining balance to the injured worker or beneficiary. RCW 51.24.060(1)(a)-(d). Thereafter, the injured worker or beneficiary cannot receive additional worker's compensation benefits until

> the amount of any further compensation and benefits shall equal any such remaining balance [of the recovery[14] paid to the employee] minus the department's and/or self-insurer's proportionate share of the costs and reasonable attorneys' fees in regards to the remaining balance. . . . Thereafter, such benefits shall be paid by the department and/or self-insurer to

---

[14] The second sentence of this statutory provision explains how "[t]his proportionate share shall be determined." RCW 51.24.060(1)(e).

or on behalf of the worker . . . as though no recovery had been made from a third person.

RCW 51.24.060(1)(e); *Davis v. Dep't of Labor & Indus.*, 166 Wn. App. 494, 496 n.1, 268 P.3d 1033 (2012).

## II. JONES' UNDIFFERENTIATED SETTLEMENT

### A. *Tobin* (2010) Does Not Apply

¶16 Jones argues that the Department erred in calculating the recovery and distribution of his third-party settlement using his full $250,000.00 settlement award because, under *Tobin*, the Department cannot base its recovery and distribution calculations on any "portion of the settlement that represents general damages of pain and suffering." Br. of Appellant at 10 (citing *Tobin*, 169 Wn.2d 396). We agree with Jones' characterization of the *Tobin* holding. But we disagree that *Tobin* applies to the facts here. Tobin's settlement agreement expressly allocated an amount for his pain and suffering damages.[15] *Tobin*, 169 Wn.2d at 398. Jones' settlement agreement, in contrast, did *not* differentiate between general and special damages; nor did it separately designate any portion of his settlement award for pain and suffering. We hold, therefore, that *Tobin* does not apply here and that it does not support Jones' argument that the Department miscalculated the recovery and distribution of his settlement.

¶17 On three separate occasions, two before and one after *Tobin*, the Court of Appeals has rejected similar

---

[15] In *Tobin*, an injured worker (Tobin) received worker's compensation benefits and settled a lawsuit with the responsible third party for $1.4 million, which included a separately allocated $793,083.16 sum designated as "pain and suffering" damages. *Tobin*, 169 Wn.2d at 398. Thereafter, the Department issued a distribution order, informing Tobin that it intended to seek reimbursement for the benefits that it had previously paid to him and that it would subject his entire $1.4 million settlement award to distribution under RCW 51.24.060(1). *Tobin*, 169 Wn.2d at 398. When presented with these facts, the Washington Supreme Court held that chapter 51.24 RCW "does not authorize the Department to seek reimbursement of damages awarded for pain and suffering" in a third-party settlement agreement. *Tobin*, 169 Wn.2d at 398.

injured workers' arguments that a portion of an unallocated third-party settlement should be excluded from statutory distribution under RCW 51.24.060: *Mills*, *Gersema*, and *Davis*. These decisions control here.

## B. *Mills* (Division One, pre-*Tobin*, 1994)

¶18 Sixteen years before the Supreme Court's decision in *Tobin*, Division One of our court addressed a similar situation in *Mills* in which the parties had not differentiated a lump sum settlement award to apportion damages awarded for loss of consortium. Mills, who had contracted lung disease during the course of his employment, received worker's compensation benefits and filed a civil action against several defendants responsible for producing the products that had caused his lung disease; he alleged both his own damages and damages for his wife's loss of consortium. *Mills*, 72 Wn. App. at 576. But when Mills settled his civil action, the parties did not allocate his wife's loss of consortium damages. The Department then issued a distribution order asserting a lien against the entire settlement amount. *Mills*, 72 Wn. App. at 576. The Board concluded that the entire settlement was subject to the lien because Mills' settlement did not allocate a portion of damages for the loss of consortium claim, which otherwise would not have been subject to the lien under existing case law. *Mills*, 72 Wn. App. at 576.

¶19 Division One affirmed the Board and the Department, reasoning:

> [T]*he parties to the settlement have the ability to control the outcome simply by allocating a certain amount or percentage of the settlement to the spousal loss of consortium* [*or general damages*] *claim.* We see no reason to require the Department to do something over which the parties had complete control. . . . If we ordered the Department to allocate recoveries, . . . we would be creating another bureaucratic responsibility which

would hinder rather than foster the Department's goal of minimizing the costs to the fund.

*Mills*, 72 Wn. App. at 577-78 (emphasis added).

C. *Gersema* (Division Two, pre-*Tobin*, 2005)

¶20 Conceding that his 2009 settlement agreement did not allocate between general and special damages, Jones nevertheless argues that this omission should not affect our analysis. He contends that the portions of his unallocated settlement agreement representing general and special damages could be "readily ascertained" by (1) subtracting the total amount of worker's compensation benefits he received (which he characterizes as "special damages") from the full settlement amount, (2) leaving a balance of what he characterizes as "general damages." Br. of Appellant at 10. This argument fails.

¶21 In *Gersema*, for example, we rejected a general damages inference argument like the one Jones advances here. *Gersema*, 127 Wn. App. at 698 n.19. We held that (1) when an injured worker's third-party settlement agreement "neither differentiated between nor specified separate amounts for special and general damages," the Department's distribution order subjected his entire lump-sum settlement to distribution;[16] (2) the Department's distribution order did not improperly calculate the statutory recovery or distribute Gersema's alleged pain and suffering damages because it was *impossible to determine from the record* what portion [of the settlement agreement] was attributable to general damages, such as pain and suffering, and what portion was attributable to special damages";[17] and (3) allowing Gersema's self-insured employer to place a lien on the excess settlement funds until such time as Gersema's future disability or medical needs are

---

[16] *Gersema*, 127 Wn. App. at 690, 696.

[17] *Gersema*, 127 Wn. App. at 695 (emphasis added).

known did not constitute an unconstitutional "taking" of or constraint on Gersema's property. *Gersema*, 127 Wn. App. at 698-99.

¶22 We decided *Gersema* five years before the Supreme Court held in *Tobin* that chapter 51.24 RCW did not allow the Department or a self-insured employer to recover and to receive distribution from the worker's pain and suffering damages received from a third-party tortfeasor. At that time, both the statutory language and case law excluded *only* loss of consortium damages from such recovery and distribution; neither the legislature nor the courts had extended this exclusion to third-party damages awards for pain and suffering.[18] *See Gersema*, 127 Wn. App. at 695-96. Nevertheless, we noted:

> If Gersema's settlement with Titus-Will had clearly allocated some or all of the damages to his pain and suffering, we might

---

[18] Furthermore, the facts in *Gersema* differ slightly from the facts here because Gersema's third-party settlement contained a more explicit waiver of liability for future damages:

> Gersema's settlement agreement . . . specifically covered "all past *and future injuries, damages or losses, whether or not known to the parties . . . but which may later develop or be discovered in connection with any of the above-referenced incident*." Recognizing that [Gersema's self-insured employer] Allstate or the Department may have to pay Gersema future disability or medical benefits under the Act if he reopens his claim, this settlement agreement specifically contemplated and sought full release for future injury and medical costs arising from Gersema's neck injury.
>
> Placing a lien on these settlement funds until such time as Gersema's future disability or medical needs are known does not constitute a "taking" of or constraint on Gersema's property. First, Gersema has already received and has access to the excess recovery funds. He is not being deprived of any property in his possession, nor will he have to pay any of these funds to Allstate. Second, unlike a lien on real property, Allstate's lien on the excess third-party recovery neither prevents nor restricts Gersema's use of these funds in any way.
>
> Rather, *if* Gersema reopens and seeks future industrial insurance benefits for his neck injury, he simply will not receive additional benefits from Allstate until the benefits to which he is entitled exceed $29,366.09, the excess recovery amount that he has already received from Titus-Will for this injury. In that event, Allstate will neither receive nor take anything to which it will not be entitled; rather, it will simply receive credit for this amount under the statute, as if Allstate, instead of Titus-Will, had paid Gersema the $29,366.09. Allstate's lien, therefore, is simply not a taking, unconstitutional or otherwise.

*Gersema*, 127 Wn. App. at 698-99 (second alteration in original) (footnotes and citation omitted).

agree with his contention that these general damages are not "excess" and, therefore, should receive the same treatment as loss of consortium damages in *Flanigan*.[19] But such is not the case here. Unlike Flanigan's differentiated award, Gersema received an undifferentiated settlement award for which *it is impossible to determine from the record what portion was attributable to general damages, such as pain and suffering,* and what portion was attributable to special damages, for which Allstate had already paid Gersema industrial insurance benefits or may pay as future benefits arising from the same neck injury. Thus, *Flanigan*, with its differentiated award, does not apply.

*Gersema*, 127 Wn. App. at 695-96 (emphasis added) (footnote omitted) (citing *Flanigan*, 123 Wn.2d at 421). Although Division One had previously reached a similar conclusion with an undifferentiated settlement agreement in *Mills*, we left for another day the issue of whether a portion of an injured worker's undifferentiated damages settlement with a third party could escape the reach of the self-insured employer if it were possible to determine from the record what portion of the injured worker's settlement was attributable to pain and suffering.

## D. *Davis* (Division One, post-*Tobin*, 2012), citing *Mills* and *Gersema*

¶23 Recently, however, two years after the Supreme Court's decision in *Tobin*, Division One of our court declined to extend *Tobin* to facts similar to those here, based in part on the pre-*Tobin Gersema* and *Mills* decisions. *See Davis*, 166 Wn. App. at 497-98. Davis, like Jones, was injured on the job and recovered damages from the third-party tortfeasor. *Davis*, 166 Wn. App. at 495-96. But because her settlement award did not allocate general damages, the Department subjected her entire settlement amount to distribution. *Davis*, 166 Wn. App. at 495-97. She appealed,

---

[19] *Flanigan v. Dep't of Labor & Indus.*, 123 Wn.2d 418, 869 P.2d 14 (1994).

citing *Tobin* and seeking a recalculation of the Department's distribution order so that a portion of her settlement could be characterized as general damages in light of *Tobin*. *Davis*, 166 Wn. App. at 495, 497-98.

¶24 Concluding that its 1994 *Mills* decision and our 2005 *Gersema* decision were "dispositive," Division One of our court held that *Tobin*'s rule—that the Department may not seek reimbursement from a third-party settlement pain and suffering damages—"applies only to *allocated* settlements." *Davis*, 166 Wn. App. at 495 (emphasis added). In so holding, Division One noted that *Mills* and *Gersema* had "unambiguously indicated to workers" that they needed to allocate between general and special damages in order to prevent a portion of their third-party settlement from being distributed under RCW 51.24.060; nothing in *Tobin* has changed this result. *Davis*, 166 Wn. App. at 501.

¶25 Jones settled with his third-party tortfeasor in 2009, years after the *Mills* and *Gersema* decisions put him on notice of the need to segregate pain and suffering damages in order to insulate them from distribution under RCW 51.24.060 to reimburse his employer for worker's compensation benefits paid to him for his third-party-caused workplace injuries. Regardless of the reason, Jones did not so differentiate, thereby leaving his entire third-party settlement subject to the statutory recovery and distribution formula such that he retained only $93,750.33 from the $250,000.00 settlement after the Department reimbursed the City $45,916.10 (*less* than the full $82,188.86 it had paid Jones in worker's compensation benefits), paid attorney fees and costs, and set aside an amount to offset additional worker's compensation benefits claimed in the future as a result of the same injury.

¶26 Agreeing with and adopting Division One's analysis in *Davis*, we hold that (1) *Tobin* does not apply to unallocated third-party settlement agreements; (2) instead, *Mills* and *Gersema* apply where the parties have an unallocated third-party settlement agreement; and (3) because Jones' lump-

sum third-party settlement agreement did not differentiate between general and special damages, the Department did not err in subjecting his entire $250,000.00 settlement to RCW 51.24.060's distribution formula.[20] Accordingly, we affirm the Board's calculations under RCW 51.24.060 for "recovery" from Jones' third party settlement and "distribution" to the City of Olympia.[21]

WORSWICK, C.J., and VAN DEREN, J., concur.

---

[20] Because we do not hold that RCW 51.24.060 permits an "invasion of unallocated general damages," we need not address Jones' alternative argument that the Department's distribution order involved an unconstitutional taking of private property under state and federal constitutions. Br. of Appellant at 16.

[21] Because we neither reverse nor modify the Board's decision, we deny Jones' request for attorney fees and costs under RCW 51.52.130(1).